LEXSEE 1999 U.S. DIST. LEXIS 12395

**J-SQUARE MARKETING, INC., Plaintiff, -against- SIPEX CORP., ALTERA CORP., DATCOM TECHNOLOGIES, INC., CATHERINE HARRINGTON, EMIL VARANO, DAVID MASON, JOHN SALZILLO, and PATRICK COUGHLIN, Defendants.**

3:97-cv-924 (GLG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1999 U.S. Dist. LEXIS 12395

**August 9, 1999, Decided**

**DISPOSITION:** [*1] Magistrate Judge Garfinkel's Recommended Ruling adopted, approved and ratified. Plaintiff's objections to Recommended Ruling (Doc. # 204) DENIED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For J SQUARE MKTG, INC, plaintiff: David J. Robertson, Bai, Pollock & Coyne, Bridgeport, CT.

For J SQUARE MKTG, INC, plaintiff: Charles E. Reuther, Kral, Clerkin, Redmond et al., Morristown, NJ.

For SIPEX CORP, EMIL VARANO, defendants: Christopher Brigham, Mary Catherine Healy, Updike, Kelly & Spellacy, P.C., New Haven, CT.

For SIPEX CORP, EMIL VARANO, defendants: Joseph M. Burke, Russo & Burke, New York, NY.

For SIPEX CORP, EMIL VARANO, defendants: Max Perlman, Sullivan, Weinstein & McQuay, P.C., Boston, MA.

For ALTERA CORP, DAVID MASON, defendants: Joshua W. Cohen, Cummings & Lockwood, Stamford, CT.

For DATCOM TECH, INC, JOHN SALZILLO, PATRICK COUGHLIN, defendants: Robert B. Flynn, Tyler, Cooper & Alcorn, New Haven, CT.

For CATHERINE HARRINGTON, defendant: Judith Ann Ravel, Anne K. Millham, Branford, CT.

**JUDGES:** Gerard L. Goettel, United States District Judge.

**OPINIONBY:** Gerard L. Goettel

**OPINION:**

MEMORANDUM DECISION

Pursuant to Federal Rule of Civil Procedure 72, plaintiff J-Square Marketing, Inc. ("J-Square") [*2] objects to the Recommended Ruling of Magistrate Judge William I. Garfinkel, which was entered on the record at a hearing held on March 4, 1999. After reviewing the briefs submitted in connection with plaintiff's objections and the transcript of the March 4th hearing, and after a hearing on those objections before this Court held on July 12, 1999, we have made a de novo determination of the issues raised in the Recommended Ruling. Fed. R. Civ. P. 72(b); Local R. Mag. JJ. 2(b). Familiarity with the Recommended Ruling and the underlying facts are presumed. For the following reasons, this Court adopts, approves, and ratifies the Recommended Ruling as set forth herein. Consequently, we DENY plaintiff's objections (Doc. # 204).

DISCUSSION

Plaintiff raises multiple objections to the Recommended Ruling. We have divided the objections into two categories--one relating to the dismissal of the complaint, and the other relating to rulings on discovery issues.

### A. Dismissal of the Complaint

As support for dismissal, the Magistrate cited both Rule 37 and Rule 41(b) of the Federal Rules of Civil Procedure. Rule 37 sets forth various sanctions, including dismissal of the action, [*3] that a court may impose in its discretion if a party disobeys a discovery order. Fed. R. Civ. P. 37(b)(2)(C). Rule 41(b) authorizes dismissal of an action for a plaintiff's failure to comply with the Federal Rules of Civil Procedure or "any order of court." Plaintiff argues that the Magistrate erred in relying on Rule 41(b) as a basis for dismissal. The Supreme Court has stated that:

> whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery. . . There is no need to resort to Rule 41(b), which appears in that part of the Rules concerned with trials and which lacks such specific references to discovery.

Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers, 357 U.S. 197, 207, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958). Here, we find that dismissal is proper under either Rule 37 or Rule 41(b), because the case involves more than plaintiff's noncompliance with a discovery order or failure to produce discovery. Rather, the crux of the decision to dismiss plaintiff's [*4] complaint involves the manner in which plaintiff and plaintiff's counsel have conducted themselves during discovery. In any event, we review the Recommended Ruling in light of the factors applicable to both Rule 37 and Rule 41(b). As at least one court in this District has found, "the factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37." Almonte v. Coca-Cola Bottling Co. of New York, Inc., 169 F.R.D. 246, 249 n.4 (D. Conn. 1996) (Dorsey, C.J.). We note that the Magistrate discussed all of these factors on the record at the March 4th hearing.

To determine whether a case should be dismissed under Rule 41(b), a court should consider: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996); [*5] Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988). No single factor is dispositive. Spencer v. Doe, 139 F.3d 107, 113 (2d Cir. 1998). Additionally, a court may dismiss a case with prejudice under Rule 37(b) only after the court finds "willfulness, bad faith, or fault on the part of the party refusing discovery." Simmons v. Abruzzo, 49 F.3d 83, 88 (2d Cir. 1995); Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 764 (2d Cir. 1990), cert. denied, 499 U.S. 943, 113 L. Ed. 2d 459, 111 S. Ct. 1404 (1991) (citation omitted).

### 1. Duration

In weighing the duration of plaintiff's misconduct, we consider the age of the case, and the nature and duration of plaintiff's dilatory conduct. Spencer, 139 F.3d at 107; Jackson v. City of New York, 22 F.3d 71, 75 (2d Cir. 1994). The Magistrate found that this case involved "long-standing misconduct, and at least one instance of flagrant misconduct." Tr. of 3/4/99, at 72. We discuss the latter issue below as part of our consideration of bad faith or wilfulness on plaintiff's part. As the Magistrate [*6] noted, he has "tried to be patient with the plaintiff." Id. at 74. Indeed, we find that the Magistrate could not have done more in his efforts to move the discovery process along. For example, between August 1998 and March 1999, the Magistrate held four lengthy hearings to address a multitude of pending discovery motions.

One of the first instances of misconduct arose in January 1998. Defendant Catherine Harrington had filed a motion to amend her answer, affirmative defenses, and counterclaims. After more than a month, this Court granted that motion absent objection. Plaintiff then moved for reconsideration. In part, plaintiff argued that its counsel was "uncertain" as to whether Harrington's document, which was entitled "Request of Catherine Harrington for Leave to Amend Answer, Affirmative Defenses and Counterclaims," was in fact a motion that had been filed with the court. Although plaintiff's counsel wrote to Harrington's counsel for clarification, he did so well after his response time had run. Surely, plaintiff's counsel could have called the Clerk's Office to check the docket sheet, or accessed PACER himself, to determine whether Harrington's document had been [*7] filed with the court as a motion.

Second, on June 22, 1998, this Court ruled on plaintiff's motion nunc pro tunc for an order allowing it additional time to respond to requests for admission. While we granted plaintiff's untimely motion, we noted that many of the responses plaintiff had served were "completely improper." We thus directed plaintiff to serve proper responses to twenty-three requests for

admission. We further noted that plaintiff was dilatory with respect to discovery.

The third example relates to plaintiff's failure to timely produce documents to defendants Sipex Corporation and Emil Varano (collectively, the "Sipex Defendants"). At the July 12th hearing, C. Max Perlman, attorney for the Sipex Defendants, argued that there was a court order to produce sales representative agreements by September 25, 1998. See Order of Mag. J. of 8/26/98. Instead of producing the documents, on September 28, 1998, plaintiff moved to strike the document request, even though he received the document request in March. The filing of this motion was untimely because it was filed three days after the Magistrate ordered plaintiff to comply with defendants' discovery request.

The fourth [*8] example, which was cited by the Magistrate, involves two motions filed by plaintiff against defendant Harrington; one is a motion to compel, and the other is a motion for contempt. On January 26, 1998, plaintiff moved to compel discovery, including production of (1) medical records of the "health care providers whom Ms. Harrington has identified as providing treatment to her with respect to the claims which are the subject of her counterclaims;" or (2) executed medical authorizations allowing plaintiff to obtain these records. This Court granted that motion in part on April 1, 1998. The relevant section of the order stated that "Defendant Harrington will either execute medical authorizations or obtain and supply complete copies of all records since 1987 to plaintiff."

After Harrington had produced several sets of medical records, plaintiff requested the records of "psychiatric/psychological health care providers" between 1987 and 1992. Reuther Letter to Millham of 7/7/98, at 1. (Harrington's counterclaims raised an emotional distress claim). The dispute over these records was the subject of a hearing before the Magistrate on August 26, 1998. At the hearing, Harrington's counsel stated [*9] that there were no medical records which had not been produced. Tr. of 8/26/98, at 72. To the extent plaintiff sought records of any psychiatrists or psychologists who treated Harrington before 1987, the Magistrate found that plaintiff could inquire about Harrington's "earlier mental health treatment in an appropriate way, because you may want to know about, as anybody would in your situation, preexisting problems, underlying disorders, anything, you know, like that." Id. at 76.

Based on references to certain health professionals in the already-produced records, plaintiff's counsel then wrote Harrington's counsel on October 21, 1998 requesting additional medical records, including records from Harrington's gynecologist and otolaryngologist. In response, Harrington filed a motion for a protective order.

On December 4, 1998, the Magistrate held a show cause hearing during which he discussed the issue of producing Harrington's medical records, and particularly whether Mr. Jay Hanan, J-Square's president and owner, should have access to those records. The Magistrate ruled that Harrington did not need to produce any gynecological records because there was no claim of [*10] an emotionally-induced gynecological problem. Tr. of 12/4/98, at 77-78, 87-88. He then directed the parties to confer about preparing another confidentiality order, whereby the Court would review the documents in camera first, to determine if they should be shared with Hanan. Id. at 84-85. In the meantime, he ordered plaintiff's counsel not to share the already-produced psychological records with Hanan. Id. at 88. He then stayed all discovery for about a month--until January 15, 1999. Id. at 96-97. According to Harrington's counsel, plaintiff never attempted to reach an agreement on producing additional medical records. Instead, on February 18, 1999 plaintiff filed a Motion for a Finding of Civil Contempt Against Defendant, Catherine Harrington, and Imposition of Sanctions Under Fed. R. Civ. P. 37(b) for Failure to Obey the Court's April 1, 1998 Order.

This motion was one of the issues addressed during the March 4th hearing. The Magistrate found that plaintiff committed two distinct discovery abuses in connection with the filing of this motion. He first found that plaintiff did not proceed with discovery on the medical records [*11] issue in the "manner and scope that I directed." Tr. of 3/4/99, at 74. Indeed, the Magistrate had previously discussed this issue at hearings, not once but twice. Plaintiff did not provide a valid reason for not following the Magistrate's directions, except to plead ignorance. At the March 4th hearing, plaintiff's counsel stated, "I think I might be missing something." Id. at 58. He also stated, "All I want is the medical records" and that "those records should be simply produced to me." Id. at 59. Plaintiff is missing the point. This Court issued the April 1, 1998 Order in response to plaintiff's motion. Thus, the order was limited in its scope to records of Harrington's treating physicians who provided service between 1987 and 1992. The Order did not entitle plaintiff to all of Harrington's medical records. The parties clearly disputed plaintiff's entitlement to additional records. For plaintiff to have argued that the medical records issue was not an "outstanding" issue, is incredible.

The Magistrate next found that plaintiff's motion for contempt against Harrington was filed for an improper purpose. Specifically, he found that "the timing for the motion for contempt is [*12] so obviously related to the

allegations of misconduct against J-Square and Mr. Hanan." Id. at 75. Based on our review of the chronology of the events, we agree with the Magistrate that the contempt motion was filed as a counter-punch to the allegations raised against J-Square and Hanan. Moreover, the motion for contempt against Harrington was filed at a time when discovery had been stayed.

The fifth instance of plaintiff's misconduct relates to two motions filed by plaintiff regarding the testimony of Mrs. Lynn Eisenhauer at the December 4th hearing. Lynn Eisenhauer is married to Mr. Larry Eisenhauer, the former owner of Datcom, Inc. Mr. Eisenhauer sold Datcom, Inc. to Patrick Coughlin and John Salzillo, who later renamed the company to Datcom Technologies, Inc. After selling Datcom, Inc., Mr. Eisenhauer formed another company called Pro Action. Mrs. Eisenhauer attended the hearing to testify about a telephone call she received from Hanan regarding the Coughlin deposition. At the beginning of her testimony, counsel for the Datcom Defendants asked her about Mr. Eisenhauer's relationship to Datcom Technologies. She answered, "He has--he's--has nothing to do with Datcom Technology, [*13] Inc. [sic]." Tr. of 12/4/99, at 7. After this hearing, on February 1, 1999, plaintiff filed a Motion to Supplement the Record With Respect to Datcom's Motion for Contempt and to Strike Portions of Datcom's Reply Brief. The substance of this motion pertains to allegedly new information on the relationship among Pro Action, Datcom, Inc., and Datcom Technologies, Inc., in light of Mrs. Eisenhauer's testimony and plaintiff's recently-gained knowledge of several UCC-1 filings.

Then on March 4th, the same day as the hearing before the Magistrate, plaintiff filed a Motion for an Order to Show Cause Why a Finding of Perjury Should Not Be Made Against Non-Party Witness, Lynn Eisenhauer, and For a Finding of Subornation of Perjury Against Defendants, Datcom Technologies, Inc., John Salzillo and Patrick Coughlin. The Magistrate found that the motion against Mrs. Eisenhauer and the Datcom Defendants was filed for an improper purpose. To the extent the filing of this motion demonstrates plaintiff's bad faith or wilfulness, it is discussed below in section 6. Specifically, the Magistrate stated that the motion was "interposed for a tactical reason and that tactical reason was improper and the [*14] motion is frivolous." Tr. of 3/4/99, at 75. Similar to our reasons for finding that the motion for contempt against Harrington was filed for an improper purpose, we agree that the perjury motion was filed as a counter-punch. As of December 1998, plaintiff knew that a substantial fine had been awarded against it by the Magistrate (discussed below in section 5). Instead of meekly coming to court in March, plaintiff filed two motions to combat the motion on the order to show cause why J-Square and Hanan should not be held in contempt.

As the sixth example of plaintiff's misconduct, plaintiff's counsel, Charles Reuther, filed an affidavit containing confidential information in violation of the Confidentiality Order. On November 12, 1998, the deposition of Patrick Coughlin was taken, and the parties received the transcript of the deposition on November 24th. According to the Confidentiality Order, the substance of the deposition was to remain confidential for twenty days after the receipt of a deposition transcript by the deponent's counsel, or until December 14th. Yet, on December 3rd, Attorney Reuther filed an affidavit of his referring to Coughlin's testimony, without filing the affidavit [*15] under seal. This matter was discussed before the Magistrate at the December 4th hearing. The Magistrate stated, "I don't think there was anything intentional on Mr. Reuther's part with respect to violation of any order or intention to harm. But that's not the point. The harm doesn't have to be intentional to be done." Tr. of 12/4/98, at 49. Indeed, on the issue of sealing his affidavit, the following exchange took place between the Magistrate and Attorney Reuther:

> MR. REUTHER: My only point about raising this testimony--and I was trying to look at the order and I might have done it so quickly I--it was not intentional and I might have made a mistake. I have to admit that. I thought it was--my recollection was I wouldn't attach deposition testimony or confidential exhibits. But here it's clearly--which you're perfectly allowed to do, is to use it in connection with a court proceeding.
>
> THE COURT: Oh. Yes. It's just a question of whether it should have been sealed.
>
> MR. REUTHER: My affidavit. Yes.
>
> THE COURT: Right. Because--
>
> MR. REUTHER: That's a problem. I'll admit that.

Id. at 57. The Magistrate then warned Attorney Reuther about ensuring that [*16] he files under seal any court document containing confidential information.

There is also evidence that Attorney Reuther sent the Magistrate a letter, containing information on Harrington's medical and emotional history, without designating the letter as "confidential." See Defs.' Ex. 14. Harrington's medical records had previously been designated as confidential pursuant to the Confidentiality Order. While the letter is ostensibly about scheduling

matters, it contains extremely personal and sensitive information on Harrington. Based on this letter, Harrington's counsel filed a motion for contempt. While the Magistrate denied the motion for contempt, we nevertheless find that the letter is the seventh example of plaintiff's abusive tactics.

The eighth and final example covers several instances of misconduct. Throughout the course of discovery, we find that plaintiff has failed to comply with Local Rule 9, which requires parties to confer before filing a discovery motion pursuant to Rules 26 through 37, Fed. R. Civ. P., in an attempt to resolve the dispute among themselves. For example, before Attorney Reuther filed his motion to strike on September 28, 1998, he did not contact [*17] counsel for the Sipex Defendants. See Tr. of 11/17/98, at 9-10. Nor did he confer with Harrington's counsel before filing the motion for contempt on February 18, 1999. Additionally, as part of plaintiff's March 4th perjury motion, plaintiff moved to strike portions of Datcom's confidentiality designations on the Coughlin deposition. Before filing this motion, plaintiff never conferred with Robert Flynn, counsel for the Datcom Defendants. See Tr. of 3/4/99, at 7-8 (arguments of Attorney Flynn describing his efforts to contact plaintiff to discuss the issue of confidentiality designations); Defs.' Ex. 1 at 3/4/99 Hrg. (letter from Flynn to Reuther requesting that they confer about the confidentiality designations). As the Magistrate noted at the hearing, "there was no reason for the plaintiff to file a motion at this point. Datcom had been making conscientious efforts to address sealing issues. There had been no conference. There is just a motion." Tr. of 3/4/99, at 75.

While we do not find that plaintiff was solely responsible for the contentiousness of this case, n1 we nevertheless find that plaintiff has committed numerous and substantive abuses over an approximately eighteen-month [*18] period (from January 1998 to July 1999). At a minimum, the discovery abuses continued repeatedly over an eight and a half month period, between this Court's June 22 order and the Magistrate's Recommended Ruling. See Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir. 1982) (stating that dilatory conduct "may warrant dismissal after merely a matter of months"). Consequently, we find that the duration and the nature of plaintiff's misconduct during discovery tips in favor of dismissal.

n1 Indeed, Reuther stated on the record that "this is a very contentious case. And I'm sensitive to that. I accept it." Tr. of 12/4/98, at 80. We note that the underlying facts involve a spurned romance between Hanan and Harrington. We thus recognize that Attorney Reuther could be representing a vindictive client.

### 2. Notice

Plaintiff was on notice as early as June 22, 1998 that its complaint could be dismissed. In a ruling issued on that date, this Court stated:

> We must observe that plaintiff [*19] having filed this (and an earlier action) seems nevertheless determined not to have the action and the counterclaim proceed. It has been extremely dilatory in making all types of discovery. We put the plaintiff on notice that this sort of behavior will no longer be tolerated and that it is in jeopardy of having its complaint stricken.

Order of 6/22/98, at 2. Plaintiff received another warning at the November 17th hearing when the Magistrate issued an Order to Show Cause Why J-Square and Mr. Hanan Should Not Be Found in Contempt for Violating the Confidentiality Order. Tr. of 11/17/98, at 33. Speaking to Attorney Reuther, the Magistrate stated, "Your behavior in this case has been abominable and it's been found abominable by Judge Goettel and I'm finding it abominable. Your client is in serious trouble. Your client may very well have done an egregious act with respect to confidentiality. He is in serious, serious, serious trouble." Id. at 39. Then at the December 4th hearing, the Magistrate decided he would defer ruling on the order to show cause so that he could confer with this Judge. Tr. of 12/4/98, at 71-73. Accordingly, we find that the notice factor tips [*20] in favor of dismissal.

### 3. Prejudice

In weighing the prejudice to defendants, we consider whether they are likely to be prejudiced by further delay in the proceedings. Defendants argue that plaintiff's abuses have continued to increase as the case has progressed, and that they will be prejudiced if it continues because they will be forced to expend additional time and incur unnecessary expenses defending themselves against frivolous motions. As the Magistrate found, "there is extreme prejudice by [plaintiff's] repeated misconduct. The cost, the stress, the waste of time is phenomenal." Tr. of 3/4/99, at 76. We agree. However, the prejudice factor does not entirely weigh in favor of dismissal, because the case will continue on Harrington's counterclaims. Moreover, the Magistrate ordered plaintiff to pay all fees and costs of each of the defendants from the outset of the case, except

Case 3:03-cv-00427-JCH    Document 22-8    Filed 02/06/2004    Page 6 of 18

Page 6
1999 U.S. Dist. LEXIS 12395, *

for the fees and costs associated with Harrington's counterclaims. Id. at 77-78.

### 4. Docket Congestion

Under the fourth factor, we balance the court's interest in calendar management against plaintiff's due process rights. In this respect, we must consider that this case [*21] was originally filed in October 1995 in the U.S. District Court for the Southern District of New York, but that action was dismissed without prejudice for improper venue. Plaintiff then re-filed its complaint in June 1996 in the Eastern District of New York. The action was transferred to the District of Connecticut on May 6, 1997. Discovery did not proceed in earnest until after this Court's decision, on August 20, 1997, granting in part and dismissing in part defendants' motions to dismiss, and for judgment on the pleadings. The case has been entrenched in the discovery phase ever since.

On the one hand, we have a case that has been in the discovery phase for approximately two years. See Spencer, 139 F.3d at 113-14 (considering the age of the case in weighing the court's interest in calendar management). As evidenced by the efforts of this Judge and the Magistrate, this Court has been very active in assisting the parties through this process. In fact, this Court referred the case to the Magistrate for all purposes except trial due to the amount of time we were spending on discovery issues. The Magistrate has held four lengthy hearings and has had several status conferences. [*22] On the other hand, we find that plaintiff has been given a fair chance to be heard at every turn. As the Magistrate stated, "J-Square has had more than its due of due process, and it's abused what it's had." Tr. of 3/4/99, at 77. Thus, we find that the balance favors dismissal.

### 5. The Efficacy of Lesser Sanctions

Sanctions were first awarded against plaintiff in August 1998 in the amount of $ 300 for plaintiff's failure to comply with defendant Harrington's discovery requests. See Tr. of 8/26/98, at 61, 107-08. The Magistrate recognized the size of the award was low, but he stated that "it's more of a message." Id. at 108. He further stated, "I don't want to be overly harsh." Id. The Magistrate again imposed costs against plaintiff at the December 4th hearing. He found that the question was not whether to assess costs, but how much. Tr. of 12/4/98, at 74. At the time, the Magistrate did not fix the level of costs, because he wanted defendants to update their requests, and he wanted to give plaintiff an opportunity to respond. Id. Finally, at the March 4th hearing, the Magistrate found that plaintiff's behavior was likely to be repeated. Tr. of 3/4/99, at [*23] 76-77. He stated, "There just isn't any effective deterrent with [plaintiff] other than termination of the case. There just isn't anything else that would be effective." Id. at 77.

This Court finds that if plaintiff's action were allowed to continue, money fines alone would not prevent further misconduct by plaintiff. Plaintiff has received warnings in the past, both from this Judge and the Magistrate Judge, and they have been ineffective. Despite these warnings, at the March 4th hearing plaintiff's counsel asserted that "I don't understand half of what's being said here this morning against me. I really don't." Id. at 43. At the July 12th hearing before this Court, plaintiff's counsel further indicated that he did not perceive any problems on his part or the part of his client. Instead, he asserted that plaintiff had produced everything it has needed to, it had complied with all discovery orders, and all of the discovery motions he filed were necessary. The position of plaintiff's counsel shows that he has his head stuck firmly in the sand, and he is not about to take it out.

### 6. Bad Faith, Wilfulness, or Fault of Plaintiff

Lastly, we consider whether there was bad [*24] faith, wilfulness, or fault on plaintiff's part. Bad faith or wilfulness "imply a deliberate disregard of the lawful orders of the court." Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1067 (2d Cir. 1979).

Plaintiff's bad faith is first demonstrated by the Magistrate's finding that Hanan testified falsely at the December 4th hearing. Tr. of 12/4/98, at 72-73. At the November 17th hearing, the Magistrate entered an Order to Show Cause Why J-Square and Mr. Hanan Should Not Be Found in Contempt for Violating the Confidentiality Order. Tr. of 11/17/98, at 33. The show cause hearing was held on December 4th, and related to the telephone call between Hanan and Mrs. Eisenhauer. Both Mrs. Eisenhauer and Hanan testified at the December 4th hearing.

The Magistrate found that Mrs. Eisenhauer's testimony was "perfectly credible" because he had the opportunity to see her demeanor on both direct and cross examination. Tr. of 3/4/99, at 71. Indeed, the Magistrate had a chance to listen to her testimony and evaluate it in the context of all the events of this case. He stated that he was "convinced that she was truthful and was testifying accurately [*25] to the best of her ability." Id.; see Tr. of 12/4/98, at 72. In contrast, he found Hanan's testimony at the hearing to be "incredible" in light of the overall context of the situation, including the contradictions with Ms. Eisenhauer's testimony, and taking into consideration Hanan's demeanor and the manner in which he testified. Tr. of 3/4/99, at 73; see Tr. of 12/4/98, at 72-73. At the December 4th hearing, he stated, "And the thing that's so disturbing here is that I think Mr. Hanan testified falsely, and about an issue that- -and intentionally so, about an issue that was not a

Case 3:03-cv-00427-JCH    Document 22-8    Filed 02/06/2004    Page 7 of 18

Page 7
1999 U.S. Dist. LEXIS 12395, *

dispositive issue in the case. But it gives me tremendous concern about what's going on in this case." Tr. of 12/4/98, at 72-73. He thus concluded that Hanan lied "with impunity" on the stand. Tr. of 3/4/99, at 73. He also found by clear and convincing evidence that "he got on the stand and lied." Id.

The second instance of bad faith and wilfulness also relates to the telephone call between Hanan and Mrs. Eisenhauer. The Magistrate found that there was misconduct not simply on the part of plaintiff's counsel, but by the client himself. Tr. of 3/4/99, at 72. On February 27, 1998, this Court [*26] had entered a Confidentiality Order governing the "production and use of all documents, testimony and all other such information produced during discovery in this action." Order of 2/27/98, at 1. With respect to deposition testimony, the Confidentiality Order provided that "all oral testimony, regardless of whether a [confidential] designation was made on the record, shall be treated as CONFIDENTIAL and subject to this Confidentiality Agreement until twenty (20) days after the transcript of the deposition has been received by the party whose CONFIDENTIAL designated documents, material or information is involved." Id. § 4, at 2. The Magistrate found that Hanan attempted to violate this Confidentiality Order by attempting to communicate improperly with Mr. Eisenhauer regarding the deposition of Patrick Coughlin. Tr. of 3/4/99, at 72. The Magistrate had previously stated, "I'm inclined to agree with the Defendants that while there wasn't a disclosure of specific content, there was activity that was improper." Tr. of 12/4/98, at 72. The Magistrate concluded that "dismissal should be used sparingly when you're dealing with the failures and acts and omissions of counsel. It's certainly [*27] more appropriate when you're dealing with the misconduct of the actual party himself and that's what we have here. We have someone who attempted to violate a confidentiality order in bad faith." Tr. of 3/4/99, at 72-73. n2

----

n2 Plaintiff argues that the Magistrate erred by failing to specify the provision of the Confidentiality Order that was allegedly violated. Based on our review of the hearing transcripts, the provision at issue was clearly understood by the parties. To the extent plaintiff argues that the Magistrate relied on the attempted violation of the Confidentiality Order as the sole basis for dismissal, plaintiff misunderstands the test for dismissals under Rule 37 and Rule 41(b). The attempted violation of the Confidentiality Order is just one example of plaintiff's bad faith. We need not decide whether the attempted violation, standing alone, would be reason enough for dismissal.

----

The final example of plaintiff's bad faith and wilfulness pertains to two motions on Mrs. Eisenhauer's testimony. The first [*28] one was filed by plaintiff on February 1, 1999 and is a Motion to Supplement the Record With Respect to Datcom's Motion for Contempt and to Strike Portions of Datcom's Reply Brief. The second one was received by the Court on March 4th and is a Motion for an Order to Show Cause Why a Finding of Perjury Should Not Be Made Against Non-Party Witness, Lynn Eisenhauer, and For a Finding of Subornation of Perjury Against Defendants, Datcom Technologies, Inc., John Salzillo and Patrick Coughlin. These motions raise claims that Lynn Eisenhauer perjured herself at the December 4th hearing, and that the Datcom Defendants suborned perjury. The motions also suggest that Robert Flynn, attorney for the Datcom Defendants, suborned perjury. As discussed briefly above in Section 1, the Magistrate found that these motions were "frivolous." Id. at 75. Indeed, he stated:

> the motion with respect to the Eisenhauer testimony, it's not just frivolous, it's pernicious. What it does is it just slings mud at perfectly honorable counsel and takes a comment from Ms. Eisenhauer's testimony that I think all counsel, other counsel and the Court, understood in context and really was not misleading in light [*29] of the representations of Datcom's own counsel concerning the debtor/creditor relation and tries to make it a basis for the most extreme allegations and the most extreme sanctions perhaps that would be available. It's just wrong. It's bad practice. It's improper and I'm puzzled by, Mr. Reuther, by your conduct because I don't get the impression that you're a bad lawyer or a bad guy.

Id. at 75-76. We find that these three examples are sufficient evidence that plaintiff and plaintiff's counsel have acted wilfully and in bad faith during discovery.

## B. Objections on Discovery Issues

Besides objecting to the portion of the Recommended Ruling dismissing the complaint, plaintiff raised several other objections to the Magistrate's rulings on discovery issues. First, plaintiff objects to the Magistrate's denial of its motion of March 4, 1999 for an Order to Show Cause Why a Finding of Perjury Should Not Be Made Against Non-Party Witness, Lynn

Case 3:03-cv-00427-JCH   Document 22-8   Filed 02/06/2004   Page 8 of 18

Page 8
1999 U.S. Dist. LEXIS 12395, *

Eisenhauer, and For a Finding of Subornation of Perjury Against Defendants, Datcom Technologies, Inc., John Salzillo and Patrick Coughlin. See id. at 70. After reviewing the hearing transcripts and the various motion papers, [*30] we uphold the Magistrate's finding that Mrs. Eisenhauer did not commit perjury and the Datcom Defendants did not suborn perjury. n3 Thus, we deny plaintiff's fourth objection.

> n3 As mentioned earlier, Mrs. Eisenhauer denied any connection between her husband and Datcom Technologies, Inc. Plaintiff relied upon the fact that when Mr. Eisenhauer sold his business to Coughlin and Salzillo, the sale price was to be paid over a period of time. Consequently, as is common, Mr. Eisenhauer had a security lien against the property involved, until such time as the payments were completed. Mr. Eisenhauer never needed to enforce this lien since the payments went forward appropriately. This minor fact cannot possibly support a claim of perjury.

Plaintiff next raises an objection about the section of its March 4th motion for an order striking Datcom's confidentiality designations as to specified pages and lines of the Coughlin deposition. Plaintiff argues that this issue was not properly addressed by the Court at the March 4th [*31] hearing. In light of the dismissal of the complaint, we find that this issue is moot. Thus, we deny plaintiff's fifth objection.

CONCLUSION

As the Magistrate stated, "I think if there is ever a case that I have seen in practice or in my time here as a judge that deserves to be dismissed for long-standing misconduct, and at least one instance of flagrant misconduct, it's this one." Tr. of 3/4/99, at 72. We agree because we find that, except for the prejudice factor, all the factors applicable to dismissals under Rule 37 and Rule 41(b) have been met in this case. Although we recognize that a dismissal with prejudice is the harshest sanction available, we find this case presents "extreme circumstances." Lucas, 84 F.3d at 535.

In sum, plaintiff has committed numerous and substantive discovery abuses, including: failing to object to one of defendant Harrington's motions and subsequently filing a motion for reconsideration, serving improper responses to requests for admission, attempting to violate the Confidentiality Order in bad faith, referring to confidential material in documents without filing the document under seal or designating the document as confidential, [*32] failing to comply with the Local Rules' requirement about conferring before filing discovery motions, lying under oath at a court hearing, filing eleventh-hour motions with improper purposes, and failing to timely respond to a discovery request--by producing the documents, moving to strike the request, or moving for an extension of time. The Second Circuit has upheld dismissals in cases involving far fewer instances of misconduct under Rule 37 and Rule 41(b). See, e.g., Baba v. Japan Travel Bureau Int'l, Inc., 111 F.3d 2, 5 (2d Cir. 1997) (affirming dismissal, under Rule 37(b), of discrimination claims against an employer based on the plaintiff's wilful disregard of the court's discovery orders for over a year, and persistence in her behavior despite repeated warnings that the case could be dismissed); Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir. 1994) (affirming the dismissal of a pro se plaintiff's employment discrimination complaint based on the plaintiff's sustained and wilful intransigence despite the court's clear and repeated warnings that failure to appear at his deposition would result in dismissal); Bobal, 916 F.2d at 765-66 [*33] (order on rehearing) (upholding the dismissal of a pro se plaintiff's complaint under Rule 37 for the plaintiff's failure to appear for her deposition despite a court warning that failure to do so would result in dismissal); John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176-77 (2d Cir. 1988) (affirming a dismissal under Rule 37(b)(2) based on the third-party plaintiff's failure to provide meaningful discovery despite three court orders, which included two warnings that dismissal was possible); Lyell Theatre, 682 F.2d at 42-43 (affirming a dismissal under Rule 41(b) where the plaintiff did not honor its commitments, did not pursue the case for about two years, and contributed to multiple adjournments and delay over the seven-year history of the case, and noting that the Second Circuit had "affirmed dismissals in cases far less egregious than this").

One section of the Recommended Ruling to which plaintiff did not object pertains to the issue of attorney's fees. At the March 4th hearing, the Magistrate ordered "appropriate sanctions in the payment of all fees and costs of each and every defendant from the outset of this [*34] case, with the exception of fees and costs related solely to the Harrington counterclaim." Tr. of 3/4/99, at 77-78. To the best of this Court's knowledge, there is a status conference scheduled in this case for Monday, August 23, 1999. We leave for the Magistrate to decide the issue of the amount of attorney's fees to be awarded to each defendant.

For the foregoing reasons, this Court adopts, approves, and ratifies Magistrate Judge Garfinkel's Recommended Ruling as set forth herein. Thus, we DENY plaintiff's objections to the Recommended Ruling (Doc. # 204).

Case 3:03-cv-00427-JCH   Document 22-8   Filed 02/06/2004   Page 9 of 18

Page 9
1999 U.S. Dist. LEXIS 12395, *

**SO ORDERED.**

**Dated: August 9, 1999**

**Waterbury, CT**

**Gerard L. Goettel**

**United States District Judge**

LEXSEE 2003 U.S. DIST. LEXIS 17929

RICHARD F. MASSARO, Plaintiff, -vs- ALLINGTOWN FIRE DISTRICT, et al., Defendants.

Civil No. 3:02cv537 (PCD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 17929

August 2, 2003, Filed

**PRIOR HISTORY:** Massaro v. Allingtown Fire Dist., 2003 U.S. Dist. LEXIS 17927 (D. Conn., Apr. 25, 2003)

**DISPOSITION:** Plaintiff's motion to compel granted and plaintiff's motion for sanctions granted in part.

**COUNSEL:** [*1] For Richard F Massaro, PLAINTIFF: Michael J Melly, Employment Law Group, Woodbridge, CT USA.

For Allingtown Fire Dist, Allington BD of Fire Comm, Louis Esposito, John Samperi, Aaron Haley, DEFENDANTS: Robert E Arnold, III, Law Offices of Robert E Arnold, LLC, New Haven, CT USA.

**JUDGES:** Peter C. Dorsey, United States District Judge.

**OPINIONBY:** Peter C. Dorsey

**OPINION:**

RULING ON MOTION TO COMPEL AND REQUEST FOR SANCTIONS

Plaintiff moves to compel the attendance of defendant John Samperi at his deposition and for sanctions for Samperi's failure to attend two properly noticed depositions. The motion to compel attendance is **granted** and the motion for sanctions is **granted in part**.

I. BACKGROUND

On October 18, 2002, plaintiff notified defendant Samperi of a deposition scheduled for December 11, 2002. The deposition was cancelled. On December 17, 2002, Samperi was notified of a second deposition scheduled for February 7, 2003. The deposition was rescheduled to February 10, 2003, by notice dated January 23, 2003, which deposition was also cancelled. On February 20, 2003, Samperi was notified of a deposition scheduled for March 27, 2003. The deposition was cancelled a third time, [*2] at which time it was rescheduled to April 1, 2003. On April 1, 2003, neither Samperi nor his counsel appeared at the deposition. The deposition was scheduled for May 7, 2003, and was later rescheduled to May 8, 2003. On May 8, 2003, plaintiff was notified one hour prior to the scheduled deposition time that Samperi would not be attending.

II. ANALYSIS

Neither party disputes that Samperi twice failed to appear at a scheduled deposition, nor that he is required to attend a properly noticed deposition. As such, the motion to compel attendance is granted. Defendant argues only that the motion should be denied for failure to provide an affidavit certifying that "counsel making the motion has conferred with opposing counsel . . . in a good faith effort to eliminate or reduce the area of controversy," D. CONN. L. CIV. R. 37(a)(2), and that the number of hours claimed in attorneys' fees as a sanction for failure to attend the two depositions is unreasonable.

As plaintiff attaches an affidavit to his reply brief certifying his good faith efforts to resolve the present dispute, n1 his technical failure does not constitute a basis for denying the motion.

n1 Plaintiff attached the affidavit to his reply brief. The affidavit is dated June 21, 2003. The original motion is dated June 24, 2003.

Case 3:03-cv-00427-JCH  Document 22-8  Filed 02/06/2004  Page 11 of 18

Page 2
2003 U.S. Dist. LEXIS 17929, *

**[*3]**

There is no dispute as to the fact that Samperi, a party-deponent, twice failed to attend his deposition. There is further no dispute that his failure to attend renders him subject to sanctions pursuant to FED. R. CIV. P. 37(d). The parties only differ as to the number of hours reasonably expended by plaintiff in preparing for the deposition.

In support of his claim for attorneys' fees, plaintiff provides a one-page summary alleging, for April 1, 2003, 14 hours of attorneys' fees at $ 240 per hour and 7 hours of associates attorneys' fees at $ 200 per hour "for research and assistance," and for May 8, 2003, 10 hours of attorneys' fees at $ 240 per hour and 5 hours of associates attorneys' fees at $ 200 per hour "for research and assistance." No time sheets are included in the request for attorneys' fees. It scarcely need be said that "any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent." *In re Hudson & Manhattan Railroad Co.*, 339 F.2d 114, 115 (2d Cir. 1964). Plaintiff does not even go so far as to identify the individual attorneys involved in the **[*4]** claim for fees, let alone "produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar lawyer's of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). In effect, plaintiff requests that this Court, absent any evidence substantiating either entitlement to the hourly fee or the necessity for the hours spent, award in excess of $ 8,000 in fees.

Absent such evidence, plaintiff shall receive attorneys' fees for 10 hours of preparation for the two depositions, a reasonable preparation time absent any detail whatsoever. This Court will not simply award thirty-six hours of attorneys' fees for deposition preparation absent any time records indicating in reasonable detail the tasks performed and why such time was necessary. As plaintiff has not provided affidavits indicating a higher rate is appropriate, the rate will be set at that typically awarded, $ 150 per hour, for a total award of $ 1,500.

As the matter of Samperi's deposition has gone unresolved for more than seven months, **[*5]** due to the failure of both defendant Samperi to attend properly noticed depositions and of plaintiff to alert this Court to the issue through motion when defendant first failed to attend his deposition some five months ago, Samperi's deposition will therefore be scheduled for a date prior to August 22, 2003, absent either (1) a joint request for an extension detailing why such deposition may not reasonably be scheduled prior to that date or (2) a stipulation filed with this Court indicating that the deposition is no longer required. Counsel for defendant shall take all necessary steps to acquaint Mr. Samperi with his legal obligation to attend such deposition and the potential sanctions, up to and including a finding of default on the claims against him, if he requires this Court to revisit the issue.

III. CONCLUSION

Plaintiff's motion to compel attendance at a deposition (Doc. No. 44-1) is **granted**. The deposition of defendant Samperi shall take place prior to August 22, 2003 as consistent with the foregoing ruling. Plaintiff's request for sanctions (Doc. No. 44-2) is **granted in part**. Plaintiff is hereby awarded $ 1,500 in attorneys' fees for defendant Samperi's failure **[*6]** to attend his depositions.

SO ORDERED.

Dated at New Haven, Connecticut, August   , 2003.

Peter C. Dorsey

United States District Judge

LEXSEE 1998 U.S. DIST. LEXIS 20315

RICHARD MESSIER, et al. v. SOUTHBURY TRAINING SCHOOL, et al.

No. 3:94-CV-1706(EBB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1998 U.S. Dist. LEXIS 20315

December 2, 1998, Decided
December 2, 1998, Filed

**DISPOSITION:** [*1] Plaintiffs' motion to compel [Doc. No. 413] granted in part and denied in part.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For Plaintiff or Petitioner: David Shaw, Hartford, Ct.

For Defendant or Respondent: James Welsh, Henry A. Salton, Attorney General's Office, Hartford, Ct.

For Defendant or Respondent: Thomas B. York, Dilworth Paxson, Harrisburg, PA.

**JUDGES:** ELLEN BREE BURNS, SENIOR JUDGE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ELLEN BREE BURNS

**OPINION:**

RULING ON MOTION TO COMPEL RETURN OF DOCUMENTS

This ruling presents the question of what remedy, if any, should be ordered based on plaintiffs' motion to compel the return of documents, when the defendants n1 returned the requested documents two weeks after the motion was filed. On July 31, 1998, plaintiffs moved pursuant to Federal Rule of Civil Procedure 37(a) for an order requiring the defendants to return documents provided to them by the plaintiffs. In the same motion, plaintiffs sought additional relief and sanctions to remedy the prejudice allegedly caused by the delay in the return of the documents. Approximately two weeks after plaintiffs filed this motion, the defendants returned the documents sought. The only remaining matter concerns whether the [*2] Court should grant the additional relief and sanctions requested by the plaintiffs. For the following reasons, plaintiffs' motion to compel [Doc. No. 413] is granted in part and denied in part.

n1 The defendants are the Commissioner of the Department of Mental Retardation, the Commissioner of the Department of Social Services, the Commissioner of the Department of Public Health, Southbury Training School ("STS"), and the Director of STS (collectively "defendants").

BACKGROUND

The Court summarizes only those facts necessary to reach a conclusion on this motion. On December 8, 1997, the defendants deposed Robert B. Kugel, M.D., plaintiffs' expert witness. At that time, defense counsel Thomas B. York, Esq. asked plaintiffs' counsel David C. Shaw, Esq. to provide the documents that Dr. Kugel relied upon to reach his opinion that the level of medical and health care at STS remains significantly below average. These documents include notes from Dr. Kugel's visits to STS, notes from his review of STS records, [*3] notes in preparation of his written report, and copies of internal documents and patient charts from STS. Plaintiffs gave the defendants these documents for the purpose of making copies. (Pls.' Mot. Compel P 1.)

On February 20, 1998, defense experts Mark Hauser, M.D. and Theodore Kastner, M.D. issued two reports critiquing Dr. Kugel's conclusions. Plaintiffs' counsel showed Dr. Kugel these two reports to help prepare for the depositions of Dr. Hauser and Dr. Kastner

Case 3:03-cv-00427-JCH   Document 22-8   Filed 02/06/2004   Page 13 of 18

Page 2
1998 U.S. Dist. LEXIS 20315, *

scheduled on March 20, 1998 and April 2, 1998 respectively. n2 Dr. Kugel responded that he needed to review his notes to refresh his recollection regarding the original basis for his opinions. (Pls.' Reply Mem. at 5.) Attorney Shaw wrote Attorney York demanding the return of Dr. Kugel's notes and documents in a letter dated March 19, 1998 and sent by facsimile on March 23, 1998. (Letter from David C. Shaw, Esq. to Thomas B. York, Esq. of 3/23/98.) Defense counsel responded on March 24, 1998 by returning some documents, (Letter from Christina L. Smith to David C. Shaw, Esq. of 3/24/98), but they were not the specific documents that plaintiffs desired. (Defs' Mem. Opp. at 1-3; Pls.' Reply Mem. 1-3.)

n2 The parties dispute whether Dr. Hauser and Dr. Kastner reviewed Dr. Kugel's notes and documents to prepare for their depositions by the plaintiffs. (Pls.' Mem. Supp. Mot. Compel at 2; Defs.' Mem. Opp. at 5-6.)

[*4]

It appears that two sets of documents were utilized at Dr. Kugel's deposition. First, nine deposition exhibits were created which amounted to approximately 100 pages. Second, Dr. Kugel had examined 10,000 to 20,000 documents which formed the basis for his written report and deposition testimony. Plaintiffs had turned over each of these sets of documents to the defendants for copying after Dr. Kugel's deposition on December 8, 1997. Defendants returned the nine deposition exhibits, but the second set of documents were not turned over. (Pls.' Reply Mem. 1-3.)

On April 1, 1998, Attorney Shaw faxed Attorney York a letter reiterating plaintiffs' request for the Kugel documents and specifically mentioning their difficulty in preparing for Dr. Kastner's upcoming deposition on April 2, 1998. (Letter from David C. Shaw, Esq. to Thomas B. York, Esq. of 4/1/98.) On this same day, Attorney York responded with a facsimile attaching the earlier letters, apparently believing that the documents he sent and plaintiffs' April 1 letter had crossed in the mail. (Defs.' Mem. Opp. at 3-4.) From this point forward, both parties vigorously dispute what transpired.

Plaintiffs' counsel contends that he made [*5] numerous oral requests of defense counsel York between April 1998 and July 1998. (Pls.' Mot. Compel at 1; Pls.' Mem. Supp. Mot. Compel at 2.) On the other hand, Attorney York argues that Attorney Shaw mentioned the Kugel documents only once in a telephone call. (Defs.' Mem. Opp. at 4.) It suffices to say that the parties could not resolve the problem without court intervention. On July 31, 1998, plaintiffs made a motion to compel the defendants to return the documents pursuant to Federal Rule of Civil Procedure 37(a). Plaintiffs also requested the following additional remedies: (1) an order permitting Dr. Kugel to return to STS to collect data to reconstruct the basis for his opinions; (2) an order precluding Dr. Hauser and Dr. Kastner from offering rebuttal testimony at trial; and (3) an award of attorney's fees and costs associated with this motion. (Pls.' Mot. Compel at 4.) Approximately two weeks later, the defendants returned the specific documents sought. (Pls.' Reply Mem. at 1; Defs.' Mem. Opp. at 5.)

On September 18, 1998, plaintiffs filed their reply brief which modified the relief sought in light of the return of the Kugel documents. Plaintiffs now seek an order permitting [*6] them to depose Dr. Hauser and Dr. Kastner again at defendants' expense regarding their criticisms of Dr. Kugel's report and deposition testimony. (Pls.' Reply Mem. at 6.) In addition, they continue their request for an award of reasonable attorney's fees and costs associated with this motion. (Id.) Plaintiffs claim that the delay in returning Dr. Kugel's notes and documents prejudiced them in effectively addressing the opinions of Dr. Hauser and Dr. Kastner at their respective depositions. (Pls.' Mot. Compel PP 8-12.) Plaintiffs deposed Dr. Hauser on March 20, 1998 and Dr. Kastner on April 2, 1998. (Pls.' Reply Mem. at 5.) They complain that Dr. Kugel could not assist them in forming questions for the defense experts without his notes, and that they could not confront the experts with documents collected from STS by Dr. Kugel because the defendants possessed them at this time. As matters currently stand, discovery has been concluded and plaintiffs cannot further depose Dr. Hauser and Dr. Kastner again absent a court order to the contrary.

DISCUSSION

I. Fed. R. Civ. P. 30(f)(1): Procedures to Copy Documents

Federal Rule of Civil Procedure 30(f)(1) provides [*7] that "documents and things produced for inspection during the examination of a witness, shall, upon the request of a party, be marked for identification and annexed to the deposition and may be inspected and copied by any party." Rule 30(f)(1) also describes alternative procedures for the making of copies in the event that the party producing the documents wishes to retain them. Pursuant to this rule, plaintiffs gave the defendants Dr. Kugel's notes and copies of documents taken from STS for their inspection and to make copies. Rule 30(f)(1) does not specify the procedures governing the return of documents after copying has been completed by a party. However, the rule clearly contemplates that such documents will be returned in a timely fashion so as not to facilitate prejudice to the

opposing party. The defendants do not dispute that there was a significant delay in returning the Kugel documents. (Defs.' Mem. Opp. at 9.)

**II. Fed. R. Civ. P. 37(a): Motions to Compel and Sanctions**

Federal Rule of Civil Procedure 37 provides district courts with the authority to oversee the discovery process by issuing orders compelling discovery and sanctions against noncomplying parties. [*8] Rule 37(a)(2)(B) allows parties to compel discovery under Rules 30, 31, 33, and 34. While Rule 37(a)(2)(B) permits litigants to compel the inspection of documents in connection with a deposition as provided by Rule 30, it does not mention a corresponding right to compel the return of documents borrowed for copying to their rightful owner. However, the Court finds that Rule 37(a)(2)(B) implicitly requires that all borrowed documents must be promptly returned.

A party making a motion to compel discovery under Rule 37(a) must certify "that the movant has in good faith conferred or attempted to confer" with the opposing party "in an effort to secure the information or material without court action." Fed. R. Civ. P. 37(a)(2)(B). Conclusory statements in an affidavit asserting that the movant fulfilled the good faith meet-and-confer requirement does not satisfy Rule 37(a). See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1998 U.S. Dist. LEXIS 1826, 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998); Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 99 (S.D.N.Y. 1997). Instead, the meet-and-confer requirement mandates that:

> [Parties must] meet, in person or by telephone, and make a genuine effort [*9] to resolve the dispute by determining . . . what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.

Deckon v. Chidebere, 1994 U.S. Dist. LEXIS 12778, 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994). Movants must detail the efforts to confer and explain why they proved fruitless. Ballou v. University of Kansas Med. Ctr., 159 F.R.D. 558, 559-60 (D. Kan. 1994). Plaintiffs have complied with this requirement. As a result, the Court may order the defendants to allow the plaintiffs to take the depositions of Dr. Hauser and Dr. Kastner again if it finds that plaintiffs suffered prejudice by not having Dr. Kugel's notes and materials.

Rule 37(a)(4)(A) also permits district courts to award attorney's fees and costs associated with a motion to compel discovery. The rule states the following:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or the deponent whose conduct necessitated the [*10] motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A). Under this provision, the Court must order reasonable costs and attorney's fees unless the movant failed to attempt to solve the problem in good faith without court action, the nonmovant's action or inaction was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37 Advisory Comm. Notes to 1970 Amendments. The Supreme Court has clarified that a party's discovery conduct is "substantially justified" if it constitutes a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." Pierce v. Underwood, 487 U.S. 552, 565, 101 L. Ed. 2d 490, 108 S. Ct. [*11] 2541 (1988) (citations omitted).

Disciplinary sanctions under Rule 37 should serve three functions. First, sanctions should ensure that a party will not benefit from its own failure to comply with the discovery rules. See Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988); Cine Forty-Second St. Theatre v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979). Second, sanctions constitute specific deterrents and seek to obtain compliance with either court orders or the ordinary standards of care appropriate for parties and their attorneys. See Update Art, 843 F.2d at 71; Cine Forty-Second St., 602 F.2d at 1066; Burnett v. Venturi, 903 F. Supp. 304, 308 (N.D.N.Y. 1995). Third, sanctions should serve as a general deterrent in the case at hand and in other litigation, provided that the party against whom they are imposed was in some sense at fault. See National Hockey League v. Metropolitan Hockey Club,

Case 3:03-cv-00427-JCH    Document 22-8    Filed 02/06/2004    Page 15 of 18

Page 4
1998 U.S. Dist. LEXIS 20315, *

Inc., 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (per curiam); Update Art, 843 F.2d at 71.

Defendants have attempted to explain their failure to return the Kugel documents as an unintentional error, partly caused [*12] by the plaintiffs. Clearly, the imposition of the harshest sanctions under Rule 37(b)-(d), such as the preclusion of evidence or the dismissal of an action, requires willful misconduct or bad faith. See, Societe Int'l v. Rogers, 357 U.S. 197, 212, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958); United States v. Certain Real Property Located at Route 1, Bryant, Ala., 126 F.3d 1314, 1317 (11th Cir. 1997); Update Art, 843 F.2d at 71; cf. Taylor v. Illinois, 484 U.S. 400, 415-17, 98 L. Ed. 2d 798, 108 S. Ct. 646 (1988) (discussing the preclusion of witness testimony for willful discovery misconduct in a criminal case). Considerations of fair play dictate that courts eschew the harshest sanctions where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence. See Cine Forty-Second St., 602 F.2d at 1068; Affanato v. Merrill Bros., 547 F.2d 138, 141 (1st Cir. 1977). Courts must inquire into the actual difficulties which the violation causes and must consider less drastic responses when litigants seek severe sanctions. See Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988).

In this case, the Court need not find bad [*13] faith or willful misconduct because plaintiffs filed their motion to compel pursuant to Rule 37(a), not Rule 37(b)-(d). Plaintiffs do not seek Rule 37(b)-(d)'s harshest remedies, but rather make a Rule 37(a) motion for leave to depose defendants' experts again and an award of attorney's fees and costs. Rule 37(a) does not require courts to make a finding of bad faith before ordering discovery or awarding attorney's fees as a sanction. See Merritt v. International Bhd. of Boilermakers, 649 F.2d 1013, 1019 (5th Cir. 1981); Devaney v. Continental Am. Ins. Co., 989 F.2d 1154, 1162-63 (11th Cir. 1993); Fed. R. Civ. P. 37 Advisory Comm. Notes to 1970 Amendments. As such, it proves unnecessary to determine whether defendants' failure to return the documents was willful or in bad faith. The Court may order the requested relief to remedy any prejudice that plaintiffs may have suffered so long as Rule 37(a)'s requirements have been satisfied.

### III. Additional Relief Requested by Plaintiffs

#### A. Depositions of Defense Experts

The Court first denies plaintiffs' request to depose Dr. Hauser again because they likely suffered little prejudice in not having the Kugel documents [*14] when they deposed Dr. Hauser on March 20, 1998. Plaintiffs possessed advance notice of this date. However, the facts show that plaintiffs' counsel made his first written demand for the Kugel documents three days after the deposition took place. Plaintiffs faxed their letter dated March 19, 1998 on March 23, 1998. (Pls.' Reply Mem. at 3 n.2; Shaw Aff. P 6.) Furthermore, plaintiffs never requested a continuance of Dr. Hauser's deposition at that time. (Defs.' Mem. Opp. at 6.) Given these circumstances, the Court has little undisputed evidence that plaintiffs were prejudiced in preparing for Dr. Hauser's deposition without the Kugel documents. Therefore, the Court denies plaintiffs' petition to depose Dr. Hauser again at this juncture in the case.

At the same time, the Court grants plaintiffs leave to depose Dr. Kastner again because there exists undisputed written evidence validating their need for the Kugel documents prior to Dr. Kastner's first deposition on April 2, 1998. Plaintiffs' letters faxed on March 23, 1998 and April 1, 1998 strongly indicate the necessity of the Kugel documents. Moreover, plaintiffs' counsel requested the Kugel documents again at Dr. Kastner's fourth [*15] deposition on June 28, 1998. (Kastner Dep. at 256-57.) Without reaching a conclusion regarding whether the defendants' conduct was willful, the Court finds that plaintiffs suffered prejudice in being deprived of the Kugel documents during their depositions of Dr. Kastner. Therefore, the Court grants plaintiffs' request to depose Dr. Kastner again. In this regard, defendants shall allow the plaintiffs to depose Dr. Kastner on a date no later than December 24, 1998. The only matters that plaintiffs may address at this deposition are Dr. Kastner's criticisms of Dr. Kugel's written report and deposition testimony. The deposition shall last no longer than one day.

#### B. Attorney's Fees and Costs

Under Federal Rule of Civil Procedure 37(a)(4)(A), the Court may order reasonable costs and attorney's fees unless the movant failed to attempt to solve the problem in good faith without court action, "the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." The circumstances underlying this motion render an award of attorney's fees and costs "unjust." First, most of the relevant factual evidence in [*16] connection with this motion remains vigorously disputed by the parties. Second, discovery has been closed. Third, plaintiffs were provided with the Kugel documents in August 1998, and thus have had almost four months to review them to prepare for trial in January 1999. Finally, the remedy of leave to depose Dr. Kastner appropriately compensates for any prejudice plaintiffs suffered. As a result, the Court denies plaintiffs' petition for an award of attorney's fees and costs associated with this motion.

### CONCLUSION

1998 U.S. Dist. LEXIS 20315, *

For the foregoing reasons, plaintiffs' motion to compel [Doc. No. 413] is granted in part and denied in part. The Court's ruling may be summarized as follows: (1) the Court denies plaintiffs' request for attorney's fees and costs associated with this motion; (2) the Court denies plaintiffs' application to depose Dr. Hauser again; and (3) the Court grants plaintiffs' leave to depose Dr. Kastner again. In this regard, defendants shall allow the plaintiffs to depose Dr. Kastner on a date no later than December 24, 1998. The only matters that plaintiffs may address at this deposition are Dr. Kastner's criticisms of Dr. Kugel's written report and deposition testimony. [*17] This deposition shall last no longer than one day.

SO ORDERED.

ELLEN BREE BURNS, SENIOR JUDGE

UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut, this 2nd day of December, 1998.

LEXSEE 1999 U.S. DIST. LEXIS 18935

GAYLE RUGGIERO, Plaintiff v. WATERBURY DAY NURSERY, ET AL., Defendants

3:9900083 (EBB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1999 U.S. Dist. LEXIS 18935

November 9, 1999, Decided
November 9, 1999, Filed

**DISPOSITION:** [*1] Defendants' Motions to Dismiss [Doc. Nos. 23 and 26] GRANTED with exception of their request for attorneys' fees DENIED.

**COUNSEL:** For GAYLE RUGGIERO, plaintiff: Eugene N. Axelrod, Employment Law Group, Woodbridge, CT.

For WATERBURY DAY NURSERY ASSOCIATION, RICHARD PELLETIER, JEAN OEMCKE, HOWARD BURLING, THERESA BEAUCHAMP, defendants: Miguel A. Escalera, Jr., Vaughan Finn, Shipman & Goodwin, Hartford, CT.

**JUDGES:** ELLEN BREE BURNS, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ELLEN BREE BURNS

**OPINION:**

RULING ON MOTIONS TO DISMISS FOR FAILURE TO COMPLY WITH COURT ORDERS REGARDING DISCOVERY

On April 27, 1999, Defendants propounded their First Set of Requests for Production of Documents, containing a short list of ten areas in which Defendants desired documents pertinent to Plaintiff's claims. The Court has reviewed the ten items and finds them utterly reasonable, based on Plaintiff's allegations in her thirteen-count complaint.

On June 4, 1999, counsel for Defendants wrote to counsel for Plaintiff requesting that he provide the overdue documents. Plaintiff's counsel did not respond to that letter.

On June 11, 1999, the Court ordered Plaintiff to comply with the Defendants' discovery [*2] requests.

On June 16, 1999, defense counsel called Plaintiff's counsel and left a message for him to call defense counsel regarding the continuing overdue discovery. No return telephone call was received.

On June 22, 1999, Defendants moved to compel Plaintiff to produce the outstanding discovery requests.

On July 5, 1999, Plaintiff objected to every one of Defendants' discovery requests and supplied no responsive documents. The objections were overly broad and, in many instances, completely frivolous. One such objection, for example, was that "Plaintiff objects to the Requests for Production of Documents to the extent that they exceed, or differ from, the requirements and/or rules of statutory practice."

On July 8, 1999, after an extensive telephone call, Plaintiff agreed to supply responsive documents on July 21, 1999. No documents were received on that date.

On July 28, 1999, the Court granted Defendants' Motion to Compel and ordered Plaintiff to respond to Defendants' discovery requests by August 17, 1999.

On August 17, 1999, Plaintiff mailed documents allegedly responsive to two of the ten requests, despite the agreement of the parties and the Order of the Court.

Unbelievably, [*3] Plaintiff filed a "Notice of Compliance" with the Court, affirming that she had complied on July 6, 1999 and August 14, 1999 with Defendants' Request for Production of Documents. It is beyond cavil that the Court would have relied on this

Notice and determined that all discovery differences had been resolved by the parties.

On August 18, 1999, Defendants filed a Motion to Dismiss based on the continuing failure of Plaintiff to comply with appropriate discovery in this case. Defendants also asked for attorneys' fees.

Faced with this Motion to Dismiss, Plaintiff turned over allegedly responsive documents to four more requests, stating that the pertinent medical records would be sent by September 1, 1999. Plaintiff failed to do so.

The failure to comply with the Court's Order continues to the date of this decision. Accordingly, under the power invested in this Court pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), the Court GRANTS Defendants' Motions to Dismiss [Doc. Nos. 23 and 26] with the exception of their request for attorneys' fees, which is DENIED.

The Clerk is directed to close this case.

SO ORDERED

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated [*4] at New Haven, Connecticut this 9th day of November, 1999.