UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE ARTHUR | : | Civil Action No. |
| Plaintiff | : | 3:03CV00427 (JCH) |
| | : | |
| v. | : | |
| | : | March 10, 2004 |
| PERKINELMER INSTRUMENTS | : | |
| Defendant | : | |

FILED 2004 MAR 10 P 3:28
U.S. DISTRICT COURT
BRIDGEPORT, CONN

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COUNTS THREE, FOUR AND FIVE OF PLAINTIFF'S COMPLAINT

### PROCEDURAL BACKGROUND

The Plaintiff Lawrence Arthur, commenced this action on March 11, 2003 for discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.* (count one) and Connecticut General Statutes §46a-60 *et seq.* (count two), and state common law claims of breach of implied contract (count three) and promissory estoppel (count four) and negligent misrepresentation (count five). The Defendant filed this present Motion to Strike Counts Three, Four and Five on February 5, 2004.

### FACTS

The Plaintiff Lawrence Arthur, commenced employment with the Defendant, Perkinelmer Instruments, in September 1964 as a Chemical Technician. Compl. ¶¶ 10, 11. The Plaintiff worked his way up to Director of Manufacturing Engineering. Compl. ¶ 11. At the time of his termination, on March 29, 2002, the Plaintiff was a Senior Engineer. Compl. ¶¶ 10, 12. During the course of his employment, Mr. Arthur never

1

received a verbal or written warning. Compl. ¶ 14. In 1999, when the Defendant was purchased by EG&G, it began a pattern of hiring younger, less-experienced employees, and terminating older highly experienced employees. Compl. ¶¶ 15, 17.

In 2000, the Defendant began a three-phase move of physical location from Norwalk to Shelton, Connecticut. Compl. ¶ 18. The Plaintiff was heavily involved in the planning and coordination of the relocation, and during 2000 and 2001, the Plaintiff worked 12 hours per day, in preparation for the move. Compl. ¶¶ 20-21, 27. For four weeks prior to and after the move, the Plaintiff worked 7 days per week for 16 hours each day. Compl. ¶ 28. The Defendant asked the Plaintiff not to use his vacation for the year 2000, because he was so heavily involved in the move, but it assured him that it would either buy back his vacation time, or allow him to carry it over to the following year. Compl. ¶ 30. However, the Defendant later refused to do so, and the Plaintiff was forced to forfeit three weeks of vacation time. Comp. ¶ 31-32.

The Plaintiff was told by the general contractor, Turner Construction, that he had saved the Defendant between $500,000 and $750,000 during the relocation. Compl. ¶ 34. The Defendant had a VIP Employee Recognition Program in which employees who showed leadership values were awarded recognition in various forms, including spotlight articles in employee newsletters, company-wide announcements and cash and merchandise awards. Compl. ¶¶ 38-39. Although the Plaintiff had assumed a great deal of responsibility and did additional work, he was not given any recognition or bonus. Compl. ¶ 41. In October 2000, the Plaintiff was asked by the new Vice President of Worldwide Operations to develop a program ("5S Program") in order to reduce waste, improve quality and safety and reduce lead time and cost. Compl. ¶ 43. The Plaintiff

made several accomplishments for the 5S Program, including establishing a 14 member steering committee, creating a comprehensive training program, creating a website for the training program, promotional posters and the program logo, as well as several other accomplishments. Compl. ¶ 44. Despite the Plaintiff's success and hard work, the new Director of Operations took these responsibilities away from him and gave them to the team leaders. Compl. ¶ 45.

In May of 2001, the Defendant began a mass layoff, due to the expensive move and declining business. Compl. ¶ 46. Older, more experienced employees with higher salaries and larger benefit packages were targeted by the layoffs, while newer, younger, less experienced employees with lower salaries and fewer benefits were retained. Compl. ¶ 47. In March of 2002, the Plaintiff received a layoff notice that stated that March 29, 2002 would be his last day. Compl. ¶ 50. The reason given for the termination was that the Plaintiff's position had been eliminated and because there were no other available positions for which the Plaintiff was qualified. Compl. ¶ 51. At the time of his layoff, the Plaintiff was qualified for several positions, including Director of Operations, Manager of Shipping and Receiving and Senior Manager Engineer for Problem Solving, but all three of these positions were filled by younger, less experienced employees. Compl. ¶¶ 52, 53.

On November 4, 2003, counsel for the Defendant deposed the Plaintiff in the Defendant law firm's Hartford office. Throughout the processing of this case and a previous case the law firm was involved in with Attorney Fass and Attorney Springer, all depositions either took place at Day, Berry & Howard's Stamford office or the Plaintiff's office. Since the previous involvement had taken place with the Stamford office, on the

day of the deposition, Attorney Axelrod, believed that the deposition was taking place there. There is no dispute that Attorney Axelrod initially traveled to the Stamford office rather than the Hartford office and turned around in Stamford and drove back and up to the Hartford office. Attorney Axelrod did not ask and Defendant did not offer any alternative other than for Attorney Axelrod to drive back to Hartford across a good part of the state to engage in the deposition. During the course of the deposition, the Plaintiff and Attorney Axelrod offered to continue the deposition until it was completed, but Defendant's declined. Therefore Defendant's claim that Attorney Axelrod was late for the deposition deliberately omits key facts.

During the deposition, the Defendant referred to numerous documents that had been requested by the Plaintiff in his Interrogatories and Requests for Production dated August 26, 2003. After requesting additional time, on October 17, 2003 the Defendant had responded to the Interrogatories and Requests for Production. However, the Defendant objected to fifteen (15) out of eighteen (18) interrogatories and objected to fourteen (14) out of twenty-two (22) requests for production. During the course of the deposition, it was particularly clear that the Defendant's objections were arbitrary and without merit. In addition, the Defendant had failed to provide a Privilege Log, in order for the Plaintiff to determine the propriety of many of the Defendant's claims of privilege. Thus, to facilitate the progress of the case, even though the Plaintiff had not received many answers to the interrogatories or the requested documents or a Privilege Log, the Plaintiff agreed to proceed with the deposition. However, the extent of probative and relevant materials withheld became clear at Plaintiff's deposition.

On November 10, 2003, the Plaintiff wrote two letters to Defendant's counsel, Sarah Moore Fass, extensively setting forth Plaintiff's requirements and reasons for expected compliance with the previously requested discovery. (See Exhibit A)  Plaintiff also requested that a "good faith opportunity be undertaken to resolve these issue," and that "in the interim the continued deposition of Mr. Lawrence Arthur will be held in abeyance." (See Exhibit B)  Thus during the Plaintiff's deposition on November 4th, numerous times the Plaintiff was asked about documents that were not previously disclosed as required by Fed. R. Civ. P. 26(b)(1).  It was clear as a result of Attorney Springer's questioning regarding many documents and events that the Defendant's refusals to previously provide the Plaintiff with discovery materials were without merit.  In order to protect the rights of the Plaintiff as well as maintain the fairness of the discovery process, the continuing deposition of the Plaintiff needed to be delayed until the resolution of outstanding discovery issues.

On November 20, 2003, Attorney Fass wrote a letter to Attorney Axelrod confirming that a telephone conference would take place on December 2, 2003 in order to resolve the outstanding discovery problems and that she would initiate the telephone call. (See Exhibit C)  However, on December 2, 2003, the law firm records show that Attorney Fass never called to discuss the issues, nor attempted to reschedule the telephone call.  Instead on December 4th, Attorney Fass, without prior agreement or notice, unilaterally decided to call Attorney Axelrod to discuss the discovery issues.  Not knowing that Attorney Fass had unilaterally decided that the telephone conference was to take place that day, Attorney Axelrod was engaged in other responsibilities and was unable to participate in a telephone conference.  On December 12, 2003, Attorney Fass

wrote to Attorney Axelrod blaming him for being unavailable on December 4th. Attorney Fass concluded the letter by disingenuously stating that she planned to proceed with the completion of the Plaintiff's deposition on December 30, 2003 without resolving the discovery dispute despite Plaintiff's extensive letter setting forth many deficiencies in Defendant's responses. (See Exhibit D) On December 15, 2003, Attorney Axelrod wrote Attorney Fass to remind her that he had previously informed her that the afternoon of December 20th was not an acceptable date for the continuation of the deposition and that he would be happy to work on an acceptable date as well as the conclusion of the outstanding discovery issues. (See Exhibit E) After receiving this letter, Attorney Fass, again failed to attempt to resolve the outstanding discovery issues and instead focused solely upon the setting of dates for the Plaintiff's remaining time left for deposition after the first day.

On December 22, 2003, Attorney Fass wrote to Attorney Axelrod, stating that she was available on January 13, 15 or 16 to depose the Plaintiff and that he was to choose which date was most convenient. Again, Attorney Fass, made no mention of resolving the discovery issues that were preventing the deposition from continuing. (See Exhibit F) The next day, December 23, 2003, Attorney Axelrod responded to Attorney Fass' letter by writing that he was committed to beginning jury selection in U.S. District Court in New Haven for the case <u>Richard Massaro v. Allingtown Fire District, et. al.</u> 3:02CV537 (PCD) on January 9, 2004 and implicitly made clear that he did not know when the trial would follow and thus would be unable to proceed with the deposition on the requested dates. (See Exhibit G)

During the month of December, Attorney Axelrod was suffering from influenza and bronchitis. He was under doctor's orders to remain at home and was instructed to limit his time in the office and his professional responsibilities in furtherance of his recovery from these severe illnesses. (See Exhibit H) As a result of Attorney Axelrod's illness, both the Plaintiff and the Defendants involved in the Massaro case requested an enlargement of time to complete the pre-trial order and to postpone jury selection. This motion was denied by Senior Judge Dorsey. Even though quite ill, Attorney Axelrod was not remiss in his responsibility to inform Attorney Fass that he could not proceed with the Plaintiff's deposition along with ensuring that his other responsibilities were fulfilled. Furthermore, Attorney Axelrod did not believe that it was his responsibility to tell Attorney Fass that he was suffering the combined illnesses of influenza and bronchitis while complying with his duty to inform counsel for the Defendant that would be unable to proceed with the depositions.

On December 29, 2003, Attorney Fass wrote to Attorney Axelrod stating new dates to take the depositions and imposing a January 6, 2004 deadline for Attorney Axelrod to chose a new date. (See Exhibit I) Attorney Fass stated that she had received Attorney Axelrod's letter dated December 23, 2003 but nonetheless deliberately ignored the fact that Attorney Axelrod stated that he was scheduled to have a jury trial shortly after the January 9, 2004 date set for jury selection. Attorney Fass merely stated "Discovery closes in this matter on February 9, 2004. According, it is imperative that we agree to a date certain to finish your client's deposition." Attorney Fass continued her attempts to depose the Plaintiff without affording him his rights to proper discovery by

refusing to provide to the Plaintiff the requested production and privilege log and continuing to refuse to resolve the outstanding discovery issues.

On January 13, 2004, with full knowledge that Attorney Axelrod was either heavily involved in preparing for the upcoming trial or would actually be on trial, Attorney Fass noticed the Plaintiff for deposition scheduled for January 23, 2004. In her letter, Attorney Fass accused Attorney Axelrod of failing to respond to her previous letter setting forth dates for the Plaintiff's deposition that was convenient for the Defendant without acknowledgment or recognition of the Plaintiff's position. (See Exhibit J) Counsel for the Defendant made no attempt to contact Attorney Axelrod to see if a mutually convenient date could be established for the Defendant to depose the Plaintiff or to discuss the still unresolved discovery issues. In addition, the fact that Attorney Axelrod had already informed counsel for the Defendant that he was unable to commit to a date in January due to his commitment to appear in court for trial in Massaro v. Allingtown Fire District, et. al. was again ignored by counsel for the Defendant.

In response to Attorney Fass' letter of January 13, 2004, Attorney Axelrod wrote to counsel for the Defendant and informed her that he would be unavailable on January 23, 2004 as a result of a court-mandated deposition. (See Exhibit K) On January 12, 2004, even though a jury had been selected, as a result of a post discovery motion by the Defendants, U.S. District Court Senior Judge Peter C. Dorsey in the case Massaro v. Alllingtown Fire District, et al., ordered the Plaintiff Richard Massaro and his wife Patricia Massaro to appear for additional questioning on or before January 23, 2004. (See Exhibit L) The depositions would begin on January 20, 2004 and with court guidance, if necessary the completion of the depositions would take place on January 23, 2004.

Continuing to ignore the fact that the Plaintiff's rights were being violated by Attorney Fass' refusal to produce the requested production, produce a privilege log to the Plaintiff, even discuss the discovery disputes or the pendency of a jury trial, on January 21, 2004 Attorney Fass noticed the Plaintiff for deposition on January 30, 2004. In her letter to Attorney Axelrod, Attorney Fass threatened the Plaintiff that she would file a Motion to Compel his attendance at the deposition. (See Exhibit M) According to the Defendant's memorandum, Attorney Fass states that on January 27, 2004 she "telephoned Attorney Axelrod to confirm that he and his client would attend the properly noticed deposition scheduled for Friday January 30." Attorney Fass continues by stating, without any proof whatsoever, "Attorney Axelrod refused to take counsel's telephone call and that Defendant's counsel left a detailed message with Attorney Axelrod's assistant." (Def. Memo. in Support of Motion to Strike, page 6) At that point in the law firm history neither Attorney Axelrod nor other attorneys in the law firm had an "assistant." While there are staff employees in the law firm who take short messages related to cases, they thereafter direct longer detailed messages to the attorney's voice mail on which Attorney Fass did not leave a message. In addition, staff employees are required to perform daily checks of voice mail. Again no message was found to have been recorded.

According to the Defendant's memorandum in support of this motion, Attorney Fass states that on January 29, 2004, she telephoned Attorney Axelrod and that "Attorney Axelrod again refused to take the telephone call." (Def. Memo. in Support of Motion to Strike, page 6) Attorney Axelrod could not "refuse" to take counsel for the Defendant's telephone call as she contends, since, Attorney Axelrod was fully engaged in a deposition for the case of <u>Lori Souza v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 3:02CV1067

9

(RNC) until after 5 p.m. and thus could not refuse to take any telephone calls as alleged by Attorney Fass. Plaintiff fully intended to attend the deposition on January 30th, however Attorney Axelrod fell victim to emergency root canal surgery that day necessitating the postponement of the deposition.

On two occasions prior to February 9, 2004, Attorney Axelrod telephoned and left a message with Attorney Fass to discuss discovery and an enlargement of the discovery deadline but did not receive any form of return message or correspondence. The discovery period did not conclude until February 9, 2004. During the remaining ten (10) days, Attorney Fass could have worked with the Plaintiff to reschedule the deposition or to seek an enlargement of the discovery period. Instead, before the discovery period even concluded the Defendant decided to file the instant Motion to Strike Counts Three, Four and Five, rather than the appropriate motion to compel deposition. Due to the Defendant's refusal to produce requested documents, failure to produce a privilege log, refusal to discuss outstanding discovery issues or work with opposing counsel, the standard for imposing the harsh sanction of a Motion to Strike is inappropriate. Rather than seek the intervention of the Court, Attorney Axelrod sought to resolve these discovery issues in a collegial manner to the eventual detriment of the Plaintiff.

## **ARGUMENT**

I.  **The Defendant violated Fed. R. Civ. P. 26(b)(5) when it refused to provide Plaintiff with a privilege log with objections to Plaintiff's Requests for Production.**

On October 17, 2003, the Defendant sent to the Plaintiff its answers to Plaintiff's First Set of Interrogatories and Requests for Production. Within the Defendant's

responses were objections to fifteen (15) out of eighteen (18) interrogatories and fourteen (14) out of twenty-two (22) requests for production. The Defendant also failed to produce a required privilege log as required by Fed. R. Civ. P. 26(b)(5) and Local Rule 37(a)(1) so that the Plaintiff could determine whether the claimed privilege was valid.

Fed. R. Civ. P. 26(b)(5) states

> "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that without revealing information itself privileged or protected will enable other parties to assess the applicability of the privilege or protection."

Local Rule 37(a)(1) further provides that

> "When a claim of privilege or work product protection is asserted in response to a discovery request for documents, the party asserting the privilege or protection shall provide the following information in the form of a privilege log: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; and (5) each recipient of the document."

The purpose of the privilege log requirement is to enable opposing counsel to "assess the applicability of the privilege without revealing information which is privileged or protected." Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 237 (W.D.N.Y. 1998). "Mere conclusory assertions of privilege are insufficient to satisfy this burden." Id., citing In re grand Jury Subpoena, 750 F.2d 223, 225 (2d Cir. 1984); see also United States v. Kovel, 296 F.2d 918, 923 (2d Cir. 1961) (Burden is on the objector to show that the privilege exists).

While the District of Connecticut has not addressed the issue of failure to produce a privilege log in a reported decision, other Second Circuit courts have addressed this issue. The Southern District of New York has stated, "Failure to comply with Rule 26(b)(5) waives the objection." Land Ocean Logistics, citing Large v. Our Lady of Mercy Medical Center, 1998 U.S. Dist. LEXIS 1702 (S.D.N.Y. 1998) (waiver of attorney client privilege found where no objection based on privilege was asserted); Smith v. Conway Organization, Inc., 154 F.R.D. 73, 76 (S.D.N.Y. 1994) (waiver of attorney client work product found where there was failure to timely object with specificity to document requests). Also in Land Ocean Logistics, the court found that the plaintiff's response to defendant's production requests made only a general assertion that the documents were confidential or privileged. The court further held that because the plaintiff failed to state with the particularity required by Fed. R. Civ. P. 26(b)(5) how those materials were privileged, the plaintiff waived its right to assert any privilege, and ordered the plaintiff to produce all such documents requested by the defendant. Land Ocean Logistics at 236-237. The Defendant in the present case has failed to provide the privilege log required by Rule 26(b)(5), and has therefore waived all entitlement to assert the privilege and should have produced the requested documents.

Counsel for the Plaintiff in the present case has made several requests that the Defendant produce its Privilege Log for those materials it claims is privileged and/or protected. To this day, the Defendant has refused to provide such privilege log detailing the documents and explaining how they are privileged. As such, the Defendant has obstructed the discovery process contrary to the clear provisions of Fed. R. Civ. P. 26(b)(5). Accordingly, after providing notice the Defendant deliberately flouted a

mandatory provision of the Fed. R. Civ. P. and cannot now claim clean hands in the factual history of this case.

## II. Defendant's Motion to Strike is an inappropriate sanction in this situation.

The Defendant by their motion seeks to strike counts three, four and five of the Plaintiff's complaint citing Fed. R. Civ. P. 37(d). The Second Circuit has held that Rule 37 sanctions require a prior order by the court before a court may impose sanctions. Daval Steel Products, Div. Of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1362-65 (2d Cir. 1991) ("[t]here must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)"), citing Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986). Prior to the filing of this Motion to Strike the Defendant has not sought any relief from the court in the form of a Motion to Compel or indeed, any order requiring the Plaintiff to appear for deposition. In order for the court to grant a motion to strike as a result of a party violating a discovery order, the disobedient party's conduct must be a result of "bad faith, willfulness, or substantial fault." Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir. 1994) As set forth in the factual history, the Plaintiff has not engaged in any behavior that could rise to the extreme standard of bad faith, willfulness or substantial fault. Further, the Defendant's use of Fed. R. Civ. P. 37(d) is premature and ignores Defendant's own conduct. Thus Defendant's motion is one-sided, unbalanced and premature.

### A. The sanctions requested by the Defendant are drastic and are not proper in this situation.

The Defendant seeks the striking of Counts three, four and five. "Rule 37's drastic sanctions, such as striking [pleadings], dismissing actions, and entering default judgments are generally appropriate only when there is some element of culpability present in the actions of a party failing to comply with a discovery order, that is, the party's failure must be willful, in bad faith, or through fault." Monaghan v. Port Authority of New York, 148 F.R.D. 500 (S.D.N.Y. 1993), citing Society Internationale Pour Participations Industrielles et Commerciales S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L. Ed. 2d 1255 (1958). In addition, "[m]ost often this culpability is demonstrated by a party's persistent refusal to comply with a discovery order." Monaghan at 509. The Defendant in the present case has not sought an order from the court requiring the Plaintiff to appear for deposition, nor has the Plaintiff ignored the Defendant.

Furthermore, "Rule 37(d) establishes sanctions that may be imposed on a party when the party fails to appear for a deposition.... 'Failure to appear' is strictly construed in this Circuit and only occurs where a deponent 'literally fails to show up for a deposition session.'" Salahuddin at 1130-1131, quoting SEC v. Research Automation Corp., F. 2d 585, 588-89 (2d Cir. 1975). In the present case, the Plaintiff has never "failed to appear" at his deposition. On November 4, 2003, when Attorney Fass chose to discontinue questioning for the day, both the Plaintiff and Attorney Axelrod offered to stay in order to complete the remainder of the deposition, but counsel for the Defendant refused. Counsel for the Defendant attempts to equate various scheduling difficulties, illness, court ordered responsibilities and its own refusal to comply with Plaintiff's

discovery requests with the "failure to appear" requirement for imposing 37(d) sanctions; this is simply not the case.

"The Supreme Court and the Second Circuit Court of Appeals have frequently cited several factors that a court must consider when deciding whether sanctions are appropriate: (1) the history of the failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned of and given an opportunity to argue against the impending sanction; (5) the prejudice to the adversary caused by the failure the comply; (6) whether the documents at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility." Burke v. IT Automotive, Inc., 139 F.R.D. 24, 33 (W.D.N.Y. 1991). See also Sterling Promotional Corp. v. General Accident Ins. Co., 2004 U.S. App. LEXIS 75 (2d Cir. 2004) (Upholding dismissal of case pursuant to Rule 37(d) where plaintiff's president evaded his deposition for three years, then abruptly terminated his court ordered deposition after only one hour, citing a non-emergency doctor's appointment and failed to reschedule the deposition).

Using the above standard, it is inappropriate for the Defendant's Motion under Fed. R. Civ. P. 37(d). There is no history of Plaintiff failing to comply with court orders. Alternatively, an extension of the discovery period in order for the deposition to occur would have been sufficient to resolve the dispute. When Attorney Axelrod contacted Attorney Fass regarding the possibility of extending the discovery period for two months, Attorney Fass informed him that she would not consider the extension until after the court ruled upon her Motion to Strike.

**B.     The Defendant fails to cite any relevant law to support its position.**

The Defendant argues in its memorandum that this Court routinely issues sanctions against parties for failing to comply with discovery orders. However the three cases the Defendant cites are all factually irrelevant to the present case. First, the Defendant cites, <u>Massaro v. Allingtown Fire District, et al.</u>, 3:02CV537 (PCD), 2003 U.S. Dist. LEXIS 17929 (D. Conn. Aug. 2, 2003) as conclusive precedent for the court awarding sanctions. The facts in <u>Massaro</u> do not support the granting of sanctions in the present case. In <u>Massaro</u>, Defendant John Samperi cancelled numerous depositions and twice failed to actually appear for his deposition after agreeing to be present without informing his counsel. On the first occasion both Mr. Samperi and his attorney failed to appear at his deposition, while on the second occasion, Mr. Samperi was unable to be found by his counsel forcing counsel one hour prior to the deposition to inform plaintiff's counsel he would not be present. It therefore was too late for the Plaintiff to inform the stenographer that the deposition was cancelled. The Motion was unopposed by the Counsel for the Defendant and the Court granted Plaintiff's Motion to Compel the Deposition of Defendant Samperi and a reasonable monetary sanction.

In the present case, the Defendant argues that the Plaintiff should be held to the standard the Court applied in <u>Massaro</u>, while ignoring the fact that the <u>Massaro</u> case dealt with a motion to compel. The Defendant erroneously attempts to cite the above case as precedent for the striking of counts as a proper sanction under Fed. R. Civ. P. 37(d) by equating the deponent's failure to actually appear at a deposition without any prior notice as the same thing as legitimately postponing a deposition. Counsel for the Defendant argues that Attorney Axelrod has failed to act in good faith by ignoring the Defendant's

letters and failing to schedule the Plaintiff's deposition. Attorney Fass, yet again, disregards the Plaintiff's rights to resolve the discovery dispute before the continuation of his deposition and ignores that fact that Attorney Axelrod informed her on numerous occasion that he was consumed with a jury trial and would be unable to schedule the Plaintiff's deposition in the strict time limits that Attorney Fass demanded by attempting to place sole responsibility upon the Plaintiff for the postponements of his deposition.

Defendant cites Ruggiero v. Waterbury Day Nursery, 3:99CV00083 (EBB), 1999 U.S. Dist. LEXIS 18935 (D. Conn. Nov. 9, 1999) as another case that provides for the striking of claims as suitable sanctions for failure to appear at deposition. Again, the facts in that case are dissimilar to those in the present case. In Ruggiero, the deponent failed to assist his counsel in obeying the court's order following a Motion to Compel Discovery. As a result of the Plaintiff's failure, the court granted the Defendant's Motion to Dismiss but denied Defendant's Motion for Attorney Fees. In the present case, the Defendant ignores the fact that in Ruggiero prior to granting sanctions, the court first granted the Defendant's Motion to Compel Discovery. Sanctions were granted in Ruggiero, due to Plaintiff's inability to comply with the court's order. In the present case, no such action has taken place and therefore the precedent in Ruggiero cannot be applicable. Again that situation was unique and factually quite different.

Lastly, the Defendant cites J-Square Marketing, Inc. v. Sipex Corp., 3:97CV924 (GLG), 1999 U.S. Dist. LEXIS 12395 (D. Conn. Aug. 9, 1999) as another case where the court has granted sanctions for discovery abuses. In that decision the court sanctioned the plaintiff for

> Numerous and substantive discovery abuses, including:
> failing to object to one of the defendant Harrington's

motions and subsequently filing a motion for reconsideration, serving improper responses to requests for admission, attempting to violate the Confidentiality Order in bad faith, referring to confidential material in documents without filing the document under seal or designating the document as confidential, failing to comply with the Local Rules' requirement about conferring before filing discovery motions, lying under oath at a court hearing, filing eleventh-hour motions with improper purpose, and failing to timely respond to discovery requests—by producing the documents, moving to strike the requests or moving for an extension of time. J-Square Marketing at *31-32.

In the present case, the Defendant equates the postponement of the Plaintiff's deposition to the same egregious behavior that is sanctioned in J-Square Marketing. No reasonable person can equate the postponement of a deposition due to scheduling difficulties, illness, court ordered responsibilities and the Defendant's own refusal to comply with Plaintiff's discovery request as the same as the numerous abuses cited in J-Square Marketing.

## CONCLUSION

The granting of Defendant's Motion to Strike would severely and irreparably prejudice the Plaintiff when the postponement was clearly not caused solely by his actions. The Defendant by motion seeks to take advantage of a situation that they caused by continued refusal to produce a privilege log or even discuss a resolution to the outstanding discovery issues. The Defendant's attempt to place sole blame upon the Plaintiff is misplaced and contrary to the facts. As a consequence of their prior actions, the Defendant should not be rewarded for their failure and refusal to work with the Plaintiff in order to resolve the outstanding discovery dispute in a collegial manner.

Based on the foregoing the Plaintiff respectfully asks this Court to deny the Defendant's Motion to Strike Counts Three, Four and Five of the Complaint. Furthermore, the Plaintiff wishes to give the Court notice that the Plaintiff will be requesting that the Court grant two (2) months in which to complete discovery.

<div style="margin-left: 40%;">

The Plaintiff
Lawrence Arthur

By: _____
Eugene N. Axelrod, Esq.(ct 00309)
The Employment Law Group, LLC
8 Lunar Drive
Woodbridge CT 06525
Tel: (203) 389-6526
Fax: (203) 389-2656

</div>

## CERTIFICATION

This is to certify that a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Strike Counts Three, Four and Five was sent via first class mail, postage pre-paid this 10th day of March 2004 to the following counsel of record.

Sarah Moore Fass, Esq.
Felix Springer, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901-2047

_____
Eugene N. Axelrod