1 of 4 DOCUMENTS

KENNETH FRANCO, Plaintiff-Appellant, v. YALE UNIVERSITY, JOHN DOES 1-10, JOHN ELEFTERIADES, GARY KOPF, RONALD MERRELL, and YALE UNIVERSITY SCHOOL OF MEDICINE, Defendants-Appellees.

No. 03-7060

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

80 Fed. Appx. 707; 2003 U.S. App. LEXIS 23405

November 17, 2003, Decided

**NOTICE:** [**1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** *Franco v. Yale Univ., 238 F. Supp. 2d 449, 2002 U.S. Dist. LEXIS 25053 (D. Conn., 2002)*

**DISPOSITION:** Affirmed.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For Appellant: JEFFREY M. DUBAN, New York, NY.

For Appellees: PATRICK M. NOONAN, Delaney, Zemetis, Donahue, Durham & Noonan, P.C. (Brock T. Dubin, on the brief), Guilford, CT.

**JUDGES:** PRESENT: HON. RICHARD J. CARDAMONE, HON. SONIA SOTOMAYOR, HON. ROBERT A. KATZMANN, Circuit Judges.

**OPINION:**

[*708] SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Connecticut (Goettel, J.) it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-appellant Kenneth Franco appeals from a judgment of the United States District Court for the District of Connecticut (Goettel, J.), entered December 4, 2002, granting summary judgment to defendant Yale University and dismissing Franco's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as from the district court's *Rule 12(b)(6)* dismissal of his claims for constructive discharge and intentional infliction of [**2] emotional distress. We review the district court's rulings on a motion to dismiss and on summary judgment *de novo*, drawing all inferences in favor of the non-moving party, *Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003)*, and for the reasons that follow, we conclude that the motions to dismiss and for summary judgment were properly granted.

Franco, a cardiothoracic surgeon, was hired as an assistant professor by Yale University School of Medicine in 1988, and after serving two three-year terms, was promoted in 1994 to associate professor, a position that entailed a five-year term of employment. His employment contract, except for the length of his term and his benefits, was never memorialized in any way. In 1995, he was informed that he would not be reappointed at the end of his term in 1999. A year later, the School of Medicine and Yale-New Haven Hospital jointly formed the Cardiothoracic Surgical Associates, P.C. ("CSA"), a private group that became primarily responsible for the Hospital's clinical practice in cardiothoracic surgery. Franco was not made a part of CSA, and alleges that as a result, he was effectively excluded from practice [**3] at the Hospital.

As an initial matter, we note that Franco never clearly articulated the theories of his case to the district court, and continues to obscure them on appeal. The foundation of Franco's contract and tort claims is not

immediately discernible from his complaint, and his contract claims remained opaque throughout the litigation. Moreover, his summary judgment submissions were completely devoid of any evidence, consisting mainly of conclusory statements that because his contract claims had survived a motion to dismiss, he was entitled to present them at a trial. No litigant may proceed to trial without ever having informed the court and the opposing parties of the legal theories and evidence supporting his or her claims for relief. See Fed. R. Civ. P. 12(b)(6), 56(c).

Franco argues that the district court erred in granting summary judgment on his claim that Yale breached his employment contract by forming CSA and excluding him from it, contending that he had an "express and/or implied-in-fact" agreement with Yale that governed the terms and conditions of his employment. While it is quite [**4] possible that the terms of Franco's employment were governed by an implied contract, see Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 733 A.2d 197, 206-07 (Conn. 1999), Franco failed to produce any evidence whatsoever of what the [*709] terms of that contract might be. Franco also asserts that his employment was governed by custom and usage, but has not offered any evidence as to what "custom and usage" entails in his profession. Because Franco bears the burden of proving the terms of his contract, as well as Yale's breach of them, Bridgeport Pipe Engineering v. DeMatteo, 159 Conn. 242, 268 A.2d 391, 393 (Conn. 1970), his conclusory assertions cannot create an issue of fact precluding summary judgment, see Conroy v. N.Y. State Dep't of Correctional Servs., 333 F.3d 88, 94 (2d Cir. 2003).

Franco also argues that the district court should not have granted summary judgment on his claim that Yale had breached the covenant of good faith and fair dealing that is implied in his employment contract. "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that [**5] what is in dispute is a party's discretionary application or interpretation of a contract term." Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789, 749 A.2d 1144, 1146 (Conn. 2000) (internal quotation marks omitted). Without any evidence as to the terms of Franco's alleged implied employment contract, it is impossible to discern whether Franco's reasonable expectations arising from the contract were defeated by his exclusion from CSA or his prospective notification that he would not be reappointed. The district court was correct in granting summary judgment on this claim as well. n1

n1 Because we find no error in the district court's dismissal of Franco's contract claims, we do not reach its ruling that Franco would be precluded from claiming contract damages based on the diminution of his salary, because of his failure to exhaust his remedies by challenging his salary negotiations through Yale's grievance procedures.

Franco next challenges the district court's dismissal of his claim [**6] for constructive discharge, based on his 1995 notification that he would not be reappointed at the end of his term. It is undisputed, however, that Franco never resigned from his position, but finished his term and was not reappointed in 1999. Because a constructive discharge claim is founded on an employer's intentional creation of a working environment so intolerable that the employee is forced to resign, Brittell v. Dep't of Corr., 247 Conn. 148, 717 A.2d 1254, 1270-71 (Conn. 1998), Franco cannot claim that he was constructively discharged in 1995. Moreover, Franco's claim that he was forced to stay at Yale through the end of his term in order to "mitigate damages" simply underscores the deficiencies of his constructive discharge theory, because it indicates that Yale did not "create[] a work environment so hostile" that any reasonable person would have felt compelled to resign. Id. at 1270.

Franco next argues that issues of fact should have precluded the district court from granting Yale's motion to dismiss his claim for intentional infliction of emotional distress. Franco claims that Yale's formation of CSA, its prospective decision not to reappoint him, [**7] its alleged marginalizing of him, and the allegedly defamatory remarks his colleagues made to potential employers (the specifics of said remarks are never described), all constituted outrageous conduct that inflicted extreme mental distress. The question of whether the conduct alleged by plaintiff is sufficiently outrageous to support a claim for intentional infliction of emotional distress is, in the first instance, a question for the court, Bell v. Bd. of Educ., 55 Conn. App. 400, 739 A.2d 321, 326-27 (Conn. App. Ct. 1999), and here the court correctly found that the alleged conduct did not exceed all bounds of what is [*710] tolerated in a decent society. See, e.g., Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337, 1338, 1342 (Conn. 1986) (holding that allegations of libel did not rise to necessary level of outrageousness). The district court was therefore correct in dismissing this claim.

Finally, Franco challenges two of the district court's discovery rulings, denying his motion to compel the production of documents and a privilege log, and granting a protective order against the deposition of David Kessler, the Dean of the Medical School during

1998 and [**8] 1999. We review discovery rulings for abuse of discretion, *Cruden v. Bank of New York, 957 F.2d 961, 972 (2d Cir. 1992)*, and find no such abuse here. With respect to Franco's motion to compel the production of various documents and a privilege log, the district court, faced with Franco's vagueness about the theories under which he was proceeding, and his failure to articulate the relevance of the documents he sought, did not abuse its discretion by denying the motion. It also did not abuse its discretion in granting a protective order against the deposition of Dean Kessler. Franco made no showing as to the need for Kessler's testimony, so as to overcome the fact that he was not employed by Yale when all of the operative events occurred, and had submitted an affidavit attesting to his lack of knowledge. *See Fed. R. Civ. P. 26(c)* (allowing the court, "for good cause shown," to prevent a deposition in order to "protect a . . . person . . . from annoyance . . . or undue burden or expense"). Thus, neither of the district court's discovery rulings was an abuse of discretion.

For the foregoing reasons, the judgment of the district [**9] court is AFFIRMED.

LEXSEE 1989 U.S. DIST. LEXIS 6050

PHIBRO ENERGY, INC., Plaintiff, v. EMPRESA DE POLIMEROS DE SINES SARL, Defendants

No. 87 Civ. 5861 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1989 U.S. Dist. LEXIS 6050*

**June 1, 1989, Decided and Filed**

OPINIONBY: [*1]

BERNIKOW, Magistrate

OPINION:

MEMORANDUM AND ORDER

LEONARD BERNIKOW, United States Magistrate

Plaintiff moves, pursuant to *F. R. Civ. P. 37*, to compel discovery and for sanctions. The facts underlying this motion are set out in plaintiff's brief, which indicates that on September 16, 1987, plaintiff served its First Request for Production of Documents on defendant ("the First Request"). Defendant did not provide a Rule 34 response as such, but produced documents. After review of the documents, plaintiff's counsel wrote to his adversary requesting further production and specifying those documents that were not produced. See Exh. C to the Lieberman affidavit. Defendant then produced some additional documents identified by plaintiff. By stipulation, dated March 14, 1988, defendant agreed to complete its response to the First Request by March 18, 1988. Id. at Exh. D. According to plaintiff, defendant agreed to complete its production only after plaintiff wrote to Judge Leisure concerning defendant's failure to produce.

Defendant made further production in March of 1988, which plaintiff still found wanting. Accordingly, plaintiff served a second request for production. In addition, [*2] plaintiff deposed two officials of defendants. At the deposition, plaintiff says, it became clear that defendants had not produced numerous documents responsive to the First Request. By letter dated My 31, 1988, plaintiff listed eleven categories of documents, identified by the two officials, that had not been produced. Id. at Exh G. On October 4, 1988, plaintiff again wrote to defendant listing fifteen categories of documents previously requested by plaintiff. Id. at Exh. H. By letter dated December 2, 1988, defendant responded to each of the fifteen categories indicating that the documents had previously been produced, had been discarded or did not exist.

Nevertheless, at a deposition of a third official from defendant taken in late December, plaintiff learned about documents that had not been produced. The missing documents were identified in a number of letters to defendant and in a letter to Judge Leisure. Id. at Exhs. H, I. On February 24, 1989, my first meeting with the parties, plaintiff says that defendant admitted that it had thousands of documents that not been produced, explaining that the failure to produce resulted from defendant's lack of familiarity with [*3] the American Litigation system.

Plaintiff on March 10, 1989 made the instant motion seeking to compel compliance with its first and second document requests. Plaintiff also sought an order of preclusion and its expenses, including attorney's fees, in obtaining the documents. Defendant cross-moved to extend the return date of the motion to enable it to obtain additional affidavits from defendant's officials in Portugal. I granted the cross motion, though the parties made some oral argument on the merits of the motion.

At oral argument on April 18, 1989, plaintiff pointed out that up until it made the motion, defendant produced documents consisting of 262 pages. After the filing of the motion, however, plaintiff says defendant produced over 3500 pages of documents. A group of documents were produced on March 21, 1989. Defendant made a further production on April 14, 1989.

Defendant, for its part, maintains that it, a foreign entity, has complied in good faith with the Federal Rules of Civil Procedure. Instead of seeking protection from plaintiff's abusive discovery tactics, defendant argues, it voluntarily and repeatedly offered its files for inspection in its offices, submitted to [*4] extensive discovery, produced thousands of pages of documents, and sent its officers and employees to attend days of depositions in New York. Defendant adds that the instant motion is moot since it completed the production of documents. It also notes that it did not oppose the motion as it undertook to produce documents independent of the motion. Thus, the portion of the motion that seeks to compel production is granted as defendant raises no objection to it. But the real question on this motion concerns whether sanctions should be imposed and, if so, the nature and extent of the sanctions.

Plaintiff notes that defendant never filed any Rule 34 response to the first two document requests. As a result, plaintiff seeks to preclude defendant from asserting: (1) that it suffered any technical problems at it PP production facility, or (2) that it lacked sufficient PP to satisfy its contractual obligations to plaintiff. As plaintiff correctly argues, Rule 37(d) does not require noncompliance with a court order before preclusion may be imposed. *Szilvassy v. United States, 82 F.R.D. 752, 755 (S.D.N.Y. 1979).* Still, an order of preclusion is not warranted. For one thing, defendant did submit [*5] documents in response to the first document request. Thus, the complete failure to produce that Rule 37(d) addresses is not present. In addition, defendant has made production and, it says, full production.

On the issue of monetary sanctions, although defendant's failures in production may not have been not wilful, it has been less than forthcoming. Even simple negligence can result in the award of sanctions. See *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1067 (2d Cir. 1979); Argo Marine Systems v. Camar Corp., 102 F.R.D. 280, 285 (S.D.N.Y. 1984), aff'd, 755 F.2d 1076 (2d Cir. 1985).*

Plaintiff has succeeded in establishing a pattern of conduct on defendant's part that warrants the imposition of sanctions. As plaintiff contends and as the exchange of letters between counsel shows, defendant has consistently made inadequate document production while claiming to have complied with all discovery requests. After defendant produced documents, plaintiff correctly assumed that it received less than full production. As noted, prior to the motion, defendant produced 262 pages of documents. After the filing of the motion, however, defendant [*6] produced over 3500 pages of documents. Plaintiff had to make the instant motion in order to obtain documents requested almost two years ago.

Rule 37(a)(4) provides for the award of reasonable expenses, including attorney's fees, to the prevailing party on a discovery motion "unless the court finds that the opposition to the motion was substantially justified." An argument can be made that since defendant made no opposition to the motion, fees are not appropriate. Prior to the 1970 amendments to the Federal rules, the rule required an award when the conduct underlying the motion was unjustified. 4A Moore's Federal Practice para. 37.02[10] at 37-54 (2d Ed. 1988). Nonetheless, the Advisory Committee Note makes clear the 1970 amendment did not limit the court's discretion: "The amendment does not significantly narrow the discretion of the court, but rather presses the court to address itself to abusive practices." *48 F.R.D. 540 (1970).* And the rule has been interpreted in accordance with the Advisory Committee Note. See *Marquis v. Chrysler Corp., 577 F.2d 624, 641 (9th Cir. 1978).* Indeed, any other interpretation would mean that a party could delay in producing documents or other [*7] discovery, not oppose a motion to compel and thus avoid sanctions. Such a result, of course, would defeat the purposes of the rule. Accordingly, we find that sanctions should be imposed. Plaintiff has requested its attorney's fees in the sum of $ 6,865. Plaintiff includes fees for attendance at two pre-trial conferences and for the preparation of correspondence concerning the document production. In my view, an appropriate award would be its fees relating to the preparation of this motion--namely, $ 1,715. Therefore, defendant is directed to pay plaintiff $ 1,715 within fourteen days of this order.

So Ordered.

Copies of this memorandum and order have been mailed this date to all parties listed below, who are hereby instructed that any objection to this report should be filed with Judge Leisure on or before June 20, 1989. See *Fed. R. Civ. P. 72(b), 6(a), 6(e).*

Dated: New York, New York, June 1, 1989